# 20-1796

## United States Court of Appeals for the Second Circuit

**JAMES GARLICK,**

PETITIONER-APPELLEE,

-AGAINST-

**WILLIAM LEE,**
**SUPERINTENDENT OF EASTERN CORRECTIONAL FACILITY**

RESPONDENT-APPELLANT.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

---

### BRIEF FOR RESPONDENT-APPELLANT

---

| | |
|---|---|
| NANCY D. KILLIAN | **DARCEL D. CLARK** |
| PETER D. CODDINGTON | DISTRICT ATTORNEY |
| JOSHUA P. WEISS | BRONX COUNTY |
| ROBERT C. MCIVER | ATTORNEY FOR RESPONDENT |
| ASSISTANT DISTRICT ATTORNEYS | BRONX, NEW YORK 10451 |
| OF COUNSEL | (718) 838-6229 |

# TABLE OF CONTENTS

Table of Authorities ................................................................................. i

Statement of the Case .............................................................................. 1

Statement of the Issue Presented ........................................................... 3

Statement of the Facts ............................................................................ 4

  The Trial ................................................................................................ 4

    The People's Case ............................................................................. 4

    The Defense ..................................................................................... 12

    The Verdict ...................................................................................... 12

  Appellate Litigation ............................................................................ 12

  The Application for a Writ of Habeas Corpus .................................. 14

    The Petition ..................................................................................... 14

    The Magistrate's Report and Recommendation .......................... 15

    The District Court's Judgment and Order ................................... 16

Summary of the Argument ..................................................................... 17

Argument .................................................................................................. 19

Point One: No clearly established precedent governed petitioner's confrontation clause when the state courts considered it.

    A. Legal Standard .............................................................................. 19

B. When the Appellate Division adjudicated petitioner's claim in 2016, there was no clearly established law dictating that autopsy reports are testimonial within the meaning of the Confrontation Clause ........................................................................................... 20

C. At the time of the state court ruling, it was not clearly established that the independent conclusions offered by an expert who testifies at trial and is subject to cross-examination violates the Confrontation Clause ........................................................................... 32

Point Two: Assuming the testimonial nature of autopsy reports was clearly established, the Appellate Division did not unreasonably apply this precedent to the facts of this case ................................................................ 37

Point Three: Any Confrontation Clause violation was harmless .............. 44

Conclusion ........................................................................................................ 53

Certificate of Compliance ........................................................................... 54

# TABLE OF AUTHORITIES

## Federal Cases

*Alger v. MacDonald*, No. 15-CV-04568-WHO, 2018 WL 3054757 (N.D. Cal. June 20, 2018) ............................................................................52

*Alvarez v. Ercole*, 763 F.3d 223 (2d Cir. 2014) ......................................45

*Brecht v. Abrahamson*, 507 U.S. 619 (1993).....................................45, 52

*Carey* v. *Musladin*, 549 U.S. 70 (2006) ...................................................29

*Cavazos v. Smith*, 565 U.S. 1 (2011) .......................................................20

*Davidson v. Bowersox*, No. 4:11CV79 NCC, 2014 WL 942738 (E.D. Mo. Mar. 11, 2014) ....................................................................................52

*Delaware v. Van Arsdall*, 475 U.S. 673 (1986) .....................................45

*Drake v. Portuondo*, 553 F.3d 230 (2d Cir. 2009) .................................20

*Fry v Pliler*, 551 U.S. 112 (2007)............................................................45

*Greene v. Fisher*, 565 U.S. 34 (2011) ......................................................19

*Hacheney v. Obenland*, 732 Fed. Appx 541 (9th Cir. 2018) ....................22

*Harrington v. Richter*, 562 U.S. 86 (2011).............................................23

*Hensley v. Roden*, 755 F.3d 724 (1st Cir. 2014)...........................22, 27, 30

*Hill v. Virga*, 588 F. App'x 723 (9th Cir. 2014).................................34, 36

*Jenkins v. Hall*, 910 F.3d 828 (5th Cir. 2018) .......................................35

*Jimenez v. Allbaugh*, 702 F. App'x 685 (10th Cir. 2017).................34, 35

*Johnston v. Mahally*, 348 F. Supp. 3d 417 (E.D. Pa. 2018) ....................27

*Knowles v. Mirzayance*, 556 U.S. 111 (2009) .........................................21

*Mallette v. Scully*, 752 F.2d 26 (2d Cir. 1984) ........................................50

*McNeiece v. Lattimore*, 501 Fed Appx 634 (9th Cir. 2012)....................22

*Millender v. Johnson*, No. CV 19-2809-KS, 2020 WL 1331053 . 27, 35, 36, 51

*Mitchell v. Kelly*, 520 Fed. Appx. 329 (6th Cir. 2013) ............................22

*Nardi v. Pepe*, 662 F.3d 107 (1st Cir. 2011)................................22, 34, 46

*Penry v. Johnson*, 532 U.S. 782 (2001) ...................................................45

*Perkins v. Herbert*, 596 F.3d 161 (2d Cir. 2010) ...................................44

*Portes v. Capra*, 420 F. Supp. 3d 49 (E.D.N.Y. 2018)............................30

*Vega v. Walsh*, 669 F.3d 123, 127 (2d Cir. 2012)............ 19, 22, 26, 34, 42

*United States v. Feliz*, 467 F.3d 227 (2d Cir. 2006) ...............................39

*United States v. Ignasiak*, 667 F.3d 1217 (11th Cir. 2012)....................30

*United States v. James*, 712 F.3d 79 (2d Cir. 2013)........ 28, 30, 40, 41, 43

*Washington v. Griffin*, 876 F.3d 395 (2d Cir. 2017) ...............................23

*White v. Woodall*, 572 U.S. 415 (2014) .....................................20, 25, 26

*Williams v. Illinois*, 567 U.S. 50 (2012)...........................................passim

**State cases**

*Banmah v. State*, 87 So.3d 101 (Fla. Dist. Ct. App 2012)......................30

*Commonwealth v. Avila*, 454 Mass. 744 (Mass. 2009) ...........................30

*Cuesta–Rodriguez v. State*, 241 P.3d 214 (Okla. Crim. App.2010).......308

*Harrison v. Commonwealth*, 2010 WL 5149356 (Va. Ct. App. Dec. 21, 2010).................................................................................................31

*People v. Dungo*, 55 Cal.4th 608 (Cal. 2012);........................................30

*People v. Freycinet*, 11 N.Y.3d 38 (N.Y. 2008) .................................. 32, 38

*People v. Hall*, 84 A.D.3d 79 (N.Y. App. Div. 2011)................................33

*People v. Horton*, 18 N.Y.2d 355 (N.Y. 1966) .........................................50

*People v. John*, 27 N.Y.3d 294 (N.Y. 2016) .............................................38

*People v. Moore*, 184 A.D.2d 1042 (N.Y. App. Div. 1992).......................50

*People v. Washington*, 86 N.Y.2d 189 (N.Y. 1995) .................................39

**Federal Statutes and Constitution**

28 U.S.C. § 2254(d)(1).................................................................. 22, 23, 25

U.S. Const. amend. VI...............................................................................37

------------------------------------------------------------------------X

JAMES GARLICK,

                    PETITIONER-APPELLEE,


        -AGAINST-                              DOCKET NO. 20-1796


WILLIAM LEE,
SUPERINTENDENT OF EASTERN CORRECTIONAL FACILITY,

                    RESPONDENT-APPELLANT.
------------------------------------------------------------------------X
ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

### STATEMENT OF THE CASE

Respondent William Lee, appeals under Fed. R. App. P. 22 (b) (3)

from an order of the United States District Court for the Southern Dis-

trict of New York (McMahon, U.S.C.D.J.), entered on June 2, 2019, which

granted his application for a writ of habeas corpus pursuant to 28 U.S.C.

§ 2254. A Notice of Appeal was timely filed in the District Court on June

4, 2020.

On November 1, 2013, a judgment was rendered in Supreme Court,

Bronx County ("the trial court") (Denis J. Boyle, J.), convicting petitioner,

after a jury trial, of Manslaughter in the First Degree (N.Y. Penal Law §

125.20 (1)), and sentencing him, as a second felony offender, to a determinate term of twenty years' incarceration and five years' post-release supervision.

On direct appeal, petitioner argued, inter alia, that the introduction of an autopsy report through surrogate testimony violated his right to confrontation under the New York State and Federal Constitutions. On November 29, 2016, the Appellate Division, First Department, unanimously affirmed the conviction and rejected Petitioner's Confrontation Clause claim. *People v. Garlick*, 144 A.D.3d 605, 606, 42 N.Y.S.3d 28, 29 (N.Y. App. Div. 2016) (A-173 – 175).[1]

On March 3, 2017, an Associate Judge of the Court of Appeals of New York denied petitioner's application for leave to appeal to that court. *People v. Garlick*, 29 N.Y.3d 948 (N.Y. 2017) (Abdus-Salaam, J.) (A-176).

On December 4, 2017, the United States Supreme Court denied Petitioner's petition for a writ of certiorari (*Garlick v. New York*, 138 S. Ct. 502, 503, 199 L. Ed. 2d 390 (2017).

On November 27, 2018, Petitioner moved for a writ of habeas corpus, alleging a Confrontation Clause violation predicated largely on the

---

[1] Citations to "A" refer to petitioner's Appendix.

same theory he previously litigated on direct appeal. On April 27, 2020, Magistrate Judge Sarah L. Cave issued a Report and Recommendation recommending that the petition be denied. Central to the Magistrate's recommendation was her determination that the Supreme Court's Confrontation Clause precedent was unsettled as to whether an autopsy report is testimonial. The Magistrate also recommended that, if the District Court agreed with the Report, that it issue a certificate of appealability because Garlick "made a substantial showing of the denial of a constitutional right." (A-51 – 114).

On June 2, 2020, the District Court (Colleen McMahon, J.) granted the petition, holding that petitioner established that the Appellate Division's holding was an unreasonable application of clearly established law (A-155 – 169).

This appeal ensued (A-170).[2]

## STATEMENT OF THE ISSUES PRESENTED

Whether the district court properly held that the introduction of autopsy report evidence through a surrogate that uses the report to

---

[2] By letter filed in the District Court and served on petitioner, dated June 24, 2020, the State communicated notice of its intention to re-try petitioner in the event that this appeal is unsuccessful (A-171 – 172).

provide independent expert conclusions violated clearly established United States Supreme Court precedent.

Whether the introduction of the report and the independent conclusions as to cause of death was harmless, where the uncontested evidence revealed that Petitioner repeatedly stabbed the victim in the chest, causing his death.

## STATEMENT OF THE FACTS

### The Trial

#### The People's Case

On November 1, 2011, Gabriel Sherwood verbally harassed Lisa Rivera and Johanna Rivera. Feeling unsafe, Lisa Rivera called her then-boyfriend, petitioner, who arrived at the scene about ten minutes later (T 65-68, 300-01).[3] Petitioner and Sherwood spoke and physically fought. That fight spilled into the lobby of an apartment building, where their actions were recorded by the building's surveillance video (T 67-68, 302-03). Petitioner struck Sherwood repeatedly about his chest with an object. After Sherwood fell to the ground, petitioner got on top of him and continued to strike him in the chest. Johanna also punched and kicked

---

[3] Citations to "T" refer to the trial transcript.

4

Sherwood while petitioner stood nearby. Petitioner pulled Johanna off of Sherwood, and petitioner, Johanna, and Lisa fled (T 68-70, 303-05). As the video surveillance showed, no one else touched Sherwood.

Police arrived on the scene and saw Sherwood lying on the ground, exhibiting no signs of life and surrounded by blood (T 155-58). EMS arrived and took Sherwood to a hospital where medical staff unsuccessfully tried to revive him and pronounced him dead at 6:40 p.m. (T 49, 159-60).

Meanwhile, at the scene, the police searched for weapons, but found none. Det. DeGrazia met with the building's superintendent and reviewed security footage depicting that evening's events (T 185-86, 218-19). Later, Det. DeGrazia met with Lisa at her apartment (T 187). After midnight on November 2, 2011, Johanna gave a statement to the police at a local precinct and was subsequently arrested and charged with murder on the theory that she had acted in concert with an unapprehended individual to intentionally cause Sherwood's death (T 70-71, 188, 271).

On November 11, 2011, petitioner was arrested (T 189). Petitioner gave oral and written statements admitting that he had fought Sherwood on the date in question, but that he "was trying to defend [himself] and [his] girlfriend" and that he "wasn't trying to hurt anybody." Petitioner

also stated that while he and Sherwood fought outside, he saw Sherwood reach into his waistband and, although petitioner did not see what Sherwood reached for,[4] he was able to wrestle it away from Sherwood. Petitioner said the fight continued inside and that Sherwood was "stronger than" petitioner and "wasn't trying to let [petitioner] go" so he "kept fighting trying to get [Sherwood] off of [him]." Petitioner said that he eventually left the building, returned to pull Johanna off of Sherwood, and left again (T 195-97).

### Autopsy and Autopsy Report

On November 1, 2011, the Office of the Chief Medical Examiner (hereinafter "OCME") received Sherwood's body. Damien Lee, a Medico-Legal Investigator, completed a "Supplemental Case Information" form that indicated that, according to a doctor at the hospital, Sherwood was "found by EMS supine on the floor . . . in cardiac arrest and with multiple (4) stab wounds to the chest and abdomen." The form further indicated that Lee called the precinct and "Per Detective Degrasio the case is pending further information and no additional information is available." (A-

---

[4] At times, petitioner has contended that "Sherwood brandished a weapon" (Petition: 5). Still, petitioner has also stated he "didn't know what [Sherwood] had" and that he "never s[aw] what it was in the course of the fight" (petitioner's written noticed statement to police).

A-289). Also, the "Notice of Death" form, completed at the same time, indicated under "Circumstances of Death," "App. Manner: Homicide," and "Other Info: call.loc[ation] ? no ems.sheet. stab wound to abdomen & chest n[ext].o[f].k[in]. unk[nown]. at this time.pct#?" (A-290).

On November 2, 2011, Dr. Katherine Maloney, with Dr. James Gill present, conducted an autopsy on Sherwood's body at OCME and issued a report (T 28-29; Autopsy report and records; A-273 – 293). Based on Dr. Maloney's "Case Worksheet," completed the same day and included in the report, Sherwood's "Immediate cause" of death was a "stab wound of torso with perforation of heart." This same cause of death was articulated in the final report on December 29, 2011 (A-275, 285).

Detectives Speranza and Farmer were also present during the autopsy (T 243; A-292), though the record is silent as to their participation, if any. Notably, a police report completed on the same day as the autopsy and included as part of the autopsy report stated "Victim was assaulted and stabbed by unknown perp(s) for unknown reason" (A-292).

In September 2013, when trial began, Dr. Maloney and Dr. Gill were no longer employed at OCME.[5] Accordingly, the People called Dr. Susan Ely, Deputy Chief Medical Examiner of OCME, to testify (T 23).

Prior to testimony, defense counsel argued that the autopsy report was testimonial, therefore, allowing a medical examiner who did not conduct the autopsy to testify about the contents of the report would violate petitioner's confrontation rights. Counsel requested that Dr. Ely be precluded from testifying about the autopsy, the nature and extent of Sherwood's injuries, and the cause of death (T 637-43). The court denied the general application, but encouraged specific objections when the expert testified (T 643). Immediately before Dr. Ely testified, counsel renewed his application that her testimony should be precluded. Relying on *People v. Freycinet* (11 N.Y.3d 38 (N.Y. 2008)), and *People v. Hall* (84 A.D.3d 79 (N.Y. App. Div. 2011), *lv. den* 18 N.Y.3d 924 (N.Y. 2012), *cert. denied* 133 S. Ct. 193 (2012))*,* the court again denied the general application and invited further objections during the witness's testimony (T 17-22). With respect to redacting the autopsy report, the People suggested that it be

---

[5] Dr. Gill became the Chief Medical Examiner of Connecticut (T 29). Dr. Ely believed that Dr. Maloney was practicing upstate in Rochester (T 47). The reason for these relocations and promotions was not developed on this record.

certified as a business record and that the witness be permitted to testify, but that the report not be moved into evidence (T 19). Defense counsel "would not agree to [the prosecutor's] suggestion" because he did not see how he could have "an effective cross-examination without the document being placed into evidence" (T 21).

Dr. Ely's brief direct testimony (T 23-44) began with a description of her training and experience in determining the cause and manner of death (T 25-28). Next, she explained OCME procedures used for documenting autopsies, testified that she had reviewed Sherwood's autopsy report, and laid the foundation necessary to have the report admitted into evidence as a business record (T 28-34). When the report was introduced, defense counsel acknowledged he had reviewed the document, did not object, and declined to *voir dire* the witness (T 34).

Based on her review of the autopsy report and related photographs, Dr. Ely described Sherwood's wounds including their location, nature, and depth. She testified that Sherwood had suffered two stab wounds and four incised wounds to his torso and blunt force trauma to his face (T 35-36). In addition, Dr. Ely gave her independent opinions and conclusions about Sherwood's injuries. In particular, she opined that the fatal injury

was a 4 ½-5 ½ inch stab wound to his chest that penetrated and perforated his skin and rib cage, continued between two ribs, and perforated his heart. This injury caused internal bleeding around his heart and within his left chest cavity, totaling 1½ liters of blood (1/3 of his total blood volume), which, in her opinion, caused shock and the collapse of his left lung (T 37-41; A-181; p. 5). Further, Dr. Ely stated that, in her professional opinion, wounds of this nature were most commonly caused by a knife (T 36-37).

On cross-examination, Dr. Ely admitted that she was not present during the autopsy and that her expert opinions were based on the data contained in the autopsy report and corresponding photographs (T 46-47). She further admitted that, based on the autopsy report and photographs, she did not know who had inflicted the stab wounds, if the wounds had been inflicted by multiple people, the height of the assailant, whether the assailant was right or left-handed, standing or sitting. She also did not know when or the order in which the wounds had been inflicted (T 48-49, 53-54).

At the conclusion of Dr. Ely's testimony, the court explained that the autopsy report "was admitted subject to certain redactions" the

parties would discuss later (T 59). After summations, the court reminded counsel that redactions needed to be addressed and took a brief recess for counsel to retrieve his annotated copy of the report to propose redactions (T 504-09). Ultimately, counsel reiterated his position that Dr. Ely's testimony was inadmissible and stated he had no "further application" with respect to redactions (T 524-26).

During summation, defense counsel focused on the surveillance video of the crime, but argued that the relative depth of Sherwood's wounds, only one of which was lethal, showed that petitioner lacked the intent to kill (T 424-25, 439). He further argued that Dr. Ely could not tell the jury "the time the fatal stab wound was inflicted," "the sequence of the cuts," "the gender," "position," or "size of the stabber," or whether they were "lefthanded or righthanded" (T 440). During the People's summation, which argued "in this case you got the crime on videotape and that's really all you need" (T 450), the prosecutor briefly responded to counsel's claims by describing the seriousness of Sherwood's injuries (T 452-53).

## The Verdict

The jury acquitted petitioner of murder, but found him guilty of first-degree manslaughter.

## Appellate Litigation

On direct appeal, petitioner argued, among other things, that the introduction of an autopsy report through surrogate testimony violated the New York State and Federal Constitutions.

On November 29, 2016, the Appellate Division, First Department, unanimously affirmed the conviction. *People v. Garlick*, 144 A.D.3d 605, 606 (N.Y. App. Div. 2016). In addressing Petitioner's Confrontation Clause contention, the Court held:

> "Defendant's right of confrontation was not violated when an autopsy report prepared by a former medical examiner, who did not testify, was introduced through the testimony of another medical examiner" (*People v. Acevedo*, 112 A.D.3d 454, 455, 976 N.Y.S.2d 82 [1st Dept. 2013], *lv. denied* 23 N.Y.3d 1017, 992 N.Y.S.2d 800, 16 N.E.3d 1280 [2014] ), since the report, which "d[id] not link the commission of the crime to a particular person," was not testimonial (*People v. John*, 27 N.Y.3d 294, 315, 33 N.Y.S.3d 88, 52 N.E.3d 1114 [2016] ). Defendant's contention that *People v. Freycinet*, 11 N.Y.3d 38, 862 N.Y.S.2d 450, 892 N.E.2d 843 (2008) has been undermined by subsequent decisions of the United States Supreme Court is

> unavailing (*see Acevedo*, 112 A.D.3d at 455, 976
> N.Y.S.2d 82). *Id.* at 606.

(A-173 – 175).

On March 3, 2017, an Associate Judge of the New York State Court of Appeals (Abdus-Salaam, J.) denied petitioner's application for leave to appeal to that court. *People v. Garlick*, 29 N.Y.3d 948 (N.Y. 2017) (A-216).

On June 28, 2017, Petitioner, represented by Jeffrey Fisher of the Stanford Law School Supreme Court Litigation Clinic, filed a petition for a writ of certiorari. In his petition, Petitioner stressed that the Supreme Court "has never considered how *Crawford* applies to autopsy reports" and that *"[l]acking clear guidance on this issue*, state and federal courts have become intractably split over whether an autopsy report is testimonial hearsay." The petition detailed the lower court split on this issue for five pages. (A-194 – 199 [p.11-16])) (internal quotations and citations omitted; emphasis added). Describing the split as "deeply entrenched," petitioner contended that "[o]nly [the Supreme Court] can resolve the conflict over how the Confrontation Clause applies" to autopsy reports.[6] *Id.*

---

[6] The People's Response acknowledged that lower courts had reached differing conclusions, but argued that this divide was the result of differing practices, such as the
*(footnote continued on the following page)*

On December 4, 2017, the United States Supreme Court denied Petitioner's petition for a writ of certiorari. *Garlick v. New York*, 138 S. Ct. 502, 503, 199 L. Ed. 2d 390 (2017).

## The Application for a Writ of Habeas Corpus

### The Petition

On November 27, 2018, Petitioner, now represented by the Center for Appellate Litigation, sought a writ of habeas corpus. Changing course from his certiorari petition where he argued that the Supreme Court needed to clarify the state of the law concerning autopsy reports and the Confrontation Clause, petitioner instead argued that the law of the Supreme Court was in fact clearly established and that the Appellate Division acted in contravention of that precedent. Respondent opposed on the ground that introduction of the autopsy report at trial and the First Department's rejection of the Confrontation Clause claim were neither contrary to nor an unreasonable application of Supreme Court precedent.

Following the written submissions, the assigned United States Magistrate (Sarah L. Cave, M.J.) requested oral argument. Prior to oral argument, the respondent submitted additional federal case law and

---

whether the organization conducting the autopsy was independent or whether the autopsy was merely the basis for independent medical conclusions at trial.

announced its intent to rely upon those cases at argument (Transcript of oral argument (A-08 – A-47).

**The Magistrate's Report and Recommendation**

Following oral argument, on April 27, 2020, the magistrate court issued its Report and Recommendation (A-51 – 114). The report recommended that the District Court conclude that the autopsy report at issue was testimonial under most relevant definitions. The report further recommended concluding that surrogate expert testimony does not satisfy the Confrontation Clause. Finally, the report recommended concluding that the New York State rule, articulated in Garlick's case and in *People v. Freycinet* (11 N.Y.3d 38 (2008)) and subsequent cases did not reflect the current Supreme Court Confrontation Clause precedent (A-136-190).

Citing this Court's case *United States v. James* (712 F.3d 79 (2d Cir. 2013), *cert. denied* 572 U.S. 1134 (2014)), while also recognizing the divide in legal authority among courts and jurisdictions across the country concerning the extent to which an autopsy report implicates a criminal defendant's right to confrontation, however, Magistrate Judge Cave went on "to conclude that the Supreme Court's Confrontation Clause precedent as to autopsy reports is "unsettled, and therefore insufficiently

'established' to grant relief to Garlick here." (A-105-109; p.55-59). On this basis, it recommended denying the petition.

**The District Court's Judgment and Order**

Following objections to the Report by both petitioner and respondent, on June 2, 2020, the District Court (Hon. Colleen McMahon) granted the petition (A-155-169). The Court found that the Report correctly focused on the "unreasonable application" prong, and not the "contrary to" prong. The Court also accepted the Report's conclusion that the First Department's ruling was an unreasonable application of federal precedent.

The Court rejected the Report's conclusion that the state of the law was unsettled at the time of the First Department's decision. On this front, it distinguished two cases cited in the Report, *Soler v. United States* (No. 10-cv-4342 (LAP), 2015 WL 4879170 (S.D.N.Y. Aug. 14, 2015)) and *Vega v. Walsh* (669 F.3d 123, 127 (2d Cir. 2012)), stating that they preceded *Bullcoming* and *Melendez-Diaz*. The Court further found that disagreements between lower state and federal courts did not preclude a finding of clearly established law (A-165 – 169, p.11-15). The Court therefore concluded that the First Department unreasonably applied Supreme Court precedent. The Court did not discuss this Court's

decision in *James*, nor did it discuss the Circuit cases provided to Magistrate Cave and cited in Respondent's Objections. The Court further adopted the Report's recommendation that this error was not harmless (A-168 – 169, p.14-15).

SUMMARY OF THE ARGUMENT

The District Court erred in two main respects. First, whether an autopsy report is testimonial within the meaning of the Confrontation Clause presents an unsettled question of federal law. Without the existence of clearly established precedent, a habeas court has no legal authority under 28 U.S.C. 2254 to disturb a state court ruling. While lower courts have disagreed on the testimonial nature of these reports, Federal Circuit Court case law demonstrates that—even in the wake of *Bullcoming* and *Melendez-Diaz*—this issue was not clearly established for the purposes of habeas relief under § 2254. Second, in 2016 it was unsettled whether an expert may offer independent medical conclusions based on an autopsy report without violating the Confrontation Clause. These separate threshold questions independently preclude the grant of habeas relief.

Further, even if the law was clearly established, the First Department correctly concluded that the report in this case was not testimonial. The independent medical conclusions offered before the jury did not offend the Confrontation Clause.

Regardless, any Confrontation Clause violation was harmless. The findings in the report were cumulative to other evidence, namely, the expert opinion testimony from a different OCME witness as to the manner and cause of the victim's death. The State's evidence establishing that Petitioner stabbed the victim to death was never contested. This evidence was corroborated by Petitioner's own statement and the testimony of several eyewitnesses. Even more significantly, the homicide was caught on video surveillance and clearly showed petitioner, and not his codefendant, inflict the mortal stab wounds. That video firmly rebutted any justification defense. Consequently, the testimony and cross-examination of the medical expert on this point would not have affected the verdict.

## ARGUMENT

## POINT ONE

**NO CLEARLY ESTABLISHED FEDERAL PRECEDENT GOVERNED PETITIONER'S CONFRONTATION CLAIM WHEN THE STATE COURTS CONSIDERED IT.**

## A.    Legal Standard

A federal court may grant habeas relief under § 2254 only if the state court's adjudication of the claim's merits "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254 (d) (1). In evaluating the state court's determination, § 2254 (d) (1) requires federal courts to measure that determination "against the Supreme Court's precedents as of the time the state court renders its decision." *Vega v. Walsh*, 669 F.3d 123, 127 (2d Cir. 2012), quoting *Greene v. Fisher*, 565 U.S. 34, 44 (2011).

Habeas relief is unavailable when there is no violation of "clearly established" federal law. Only after surmounting this threshold determination may a court reach the merits of the claim and decide whether the state ruling was an unreasonable or contrary application to settled precedent. Federal law may only be clearly established by the holdings, as

opposed to dicta, of the United States Supreme Court. *White v. Woodall*, 572 U.S. 415, 419 (2014). An unreasonable application of those holdings must be "objectively unreasonable, not merely wrong; even 'clear error' will not suffice." *Id.*, quoting *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). A federal court can disturb a state court ruling only where it was "so lacking in justification that there was . . . [no] possibility for fair-minded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see also Cavazos v. Smith*, 565 U.S. 1, 9 (2011) (per curiam) (citing Supreme Court jurisprudence "highlighting the necessity of deference to state courts in § 2254 (d) habeas cases"); *Vega*, 669 F.3d at 126.

This Court reviews *de novo* a District Court's decision to grant a writ of habeas corpus under 28 U.S.C. § 2254. *Alvarez v. Ercole*, 763 F.3d 223, 229 (2d Cir. 2014). It reviews findings of fact for clear error. *Drake v. Portuondo*, 553 F.3d 230, 239 (2d Cir. 2009).

**B.  When the Appellate Division adjudicated petitioner's Confrontation Claim in 2016, there was no clearly established federal law dictating that an autopsy report is testimonial within the meaning of the Confrontation Clause.**

The District Court erred in rejecting the Report's conclusion that it was not clearly established that autopsy reports are testimonial. At the time of the Appellate Division's decision, the Supreme Court had not

addressed this issue. Indeed, as argued by petitioner in his certiorari petition, this issue remains unsettled.[7]

Whether federal law is "clearly established" by United States Supreme Court precedent is a threshold determination. *Andrade*, 538 U.S. at 71; *see generally Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) ("it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court.").[8]

Recent Circuit Court cases have considered petitioner's argument and concluded that it may not serve as the basis for relief because the claim implicates an unsettled question of federal law. *See, e.g., Hensley*

---

[7] This argument is preserved. Respondent argued at length before the magistrate and district court that the testimoniality of autopsy reports was not clearly established. *See, e.g.*, Respondent's Memorandum of Law pp. 21-29; Transcript of Oral Argument (A-08 − 47 ). Although not required for the party prevailing on this point in the Report and Recommendation (*e.g., United States v. Street*, 917 F.3d 586, 598 (7th Cir. 2019) (collecting cases and noting "Other circuits that have addressed this issue agree that 'a party, who substantially prevails in a magistrate judge's recommendation, does not waive the right to appeal secondary issues resolved against him by failing to object to the recommendation,' for such a requirement would frustrate the purpose of a waiver rule."); *M. v Falmouth School Dept.*, 847 F.3d 19, 26 (1st Cir. 2017)), respondent reiterated this contention in its objections to the Report and its response to the Petitioner's Objections (A-115 − 120;142 − 154).

[8] The District Court correctly held that the contrary to prong was inapplicable to the case at hand. The Appellate Division, First Department located the correct rule, namely out-of-court statements are only subject to confrontation to the extent that they are testimonial. This distinction is irrelevant, however, if federal law is unclear. 28 U.S.C. § 2254 (d) (1).

*v. Roden*, 755 F.3d 724, 732 (1st Cir. 2014) (denying habeas petition arguing admission of autopsy report was error because "*Melendez–Diaz* did not say one way or the other whether autopsy reports should be considered testimonial."); *Mitchell v. Kelly*, 520 Fed. Appx. 329, 331 (6th Cir. 2013) (finding state court did not unreasonably apply *Crawford* in holding autopsy report was not testimonial); *Vega v. Walsh*, 669 F.3d 123, 127 (2d Cir. 2012); *McNeiece v. Lattimore*, 501 Fed Appx 634, 636 (9th Cir. 2012); *Nardi v. Pepe*, 662 F.3d 107, 111-112 (1st Cir. 2011) ("Abstractly, an autopsy report can be distinguished from, or assimilated to, the sworn documents in *Melendez-Diaz* and *Bullcoming* . . . The law has continued to evolve and no one can be certain just what the Supreme Court would say about that issue today"); *see also Hacheney v. Obenland*, 732 Fed. Appx 541, 543 (9th Cir. 2018), *cert. denied*, 139 S. Ct. 388, 202 L. Ed. 2d 296 (2018) (holding that neither *Crawford* nor *Melendez-Diaz* found that reports in connection with autopsies were testimonial). Simply put, Respondent cannot meaningfully improve upon the analyses put forward by this Court or the First, Sixth, and Ninth Circuits. We urge this Court to apply this well-reasoned case law and reverse.

Notably, in *Vega v. Walsh* (669 F.3d 123, 127 (2d Cir. 2012)), this Court held that the Appellate Division, Second Department did not unreasonably apply federal law in finding an autopsy report was not testimonial. 669 F.3d at 128. In *Vega*, this Court noted that the state of the law was unsettled and that the "nonexhaustive" list of testimonial statements in *Crawford* provided guidance that "was hardly definitive." *Vega*, 669 F.3d at 128. The *Vega* court also reasoned that autopsies are conducted for a number of reasons apart from use in a court proceeding and held that § 2254 relief could not lie. *Id. Vega* and the out-of-circuit case law should control the case at hand. Because the testimonial nature of autopsy reports is unresolved by the Supreme Court, the Appellate Division's ruling was not an unreasonable application of clearly established law. The petition should not have been granted. *See generally Washington v. Griffin*, 876 F.3d 395 (2d Cir. 2017) (Affirming denial of habeas relief because, under controlling Supreme Court precedent, the question of whether a DNA profile is created with a primary purpose that implicates the Confrontation Clause "is, at the very least, debatable.").

While it did not discuss the above out-of-circuit case law, the District Court distinguished *Vega* and a District Court opinion in *Soler v.*

*United States*. It held that these cases (which analyzed state court decision from 2005 and a federal conviction from 2007, respectively) could not "avail themselves of the Confrontation Clause principles announced in *Melendez-Diaz* and *Bullcoming* that the First Department disregarded when affirming Garlick's conviction." The Court therefore reasoned that those cases "highlight the importance of the Supreme Court's post-2007 Confrontation Clause decisions, which expressly eliminated the accusatory witness distinction on which the First Department rested its decision, and which made clear that statements contained within certified reports composed in the course of a criminal investigation are testimonial in nature." *Id.* at *7.

At the outset, while the *Vega* court held that it could rest its decision solely on the state of the law in 2005, it specifically recognized the uncertainty left in the wake of *Melendez-Diaz* and *Bullcoming,* noting that they had further obscured the boundaries between testimonial and non-testimonial forms of evidence. This Court noted "that a fair issue exists as to whether the Appellate Division's decision would have been contrary to or an unreasonable application of *Melendez-Diaz* or *Bullcoming*, even assuming they had already been decided, as there are significant

differences between narcotics and blood alcohol analyses and autopsies." *Vega*, 669 F.3d at 128 n.2. Accordingly, Magistrate Cave correctly relied upon *Vega* and related cases, and the District Court improperly rejected her finding on this point.

More fundamentally, the District Court erred not because it believed that the Supreme Court had addressed whether autopsy reports are testimonial. Rather, it found that the Appellate Division unreasonably failed to extend the holding of *Melendez-Diaz* and *Bullcoming* to autopsy reports. Specifically, the District Court concluded that the holdings of those cases could be extended to address autopsy reports, notwithstanding differences between those reports and the evidence at issue in *Melendez-Diaz* and *Bullcoming* (Decision and order A-165; p.11). ("There are, no doubt, many types of forensic reports containing the types of statements deemed testimonial in *Crawford*, *Melendez-Diaz*, and *Bullcoming*. But the fact that different types of documentation exist does not mean that each type must be deemed subject to the Supreme Court's recent Confrontation Clause precedents before those precedent can be applied to them."). This was improper.

In *White v. Woodall*, the Supreme Court expressly rejected this approach. There, Woodall argued that the state court unreasonably failed to extend a rule requiring a no-adverse inference charge relating to the privilege against self-incrimination to the penalty phase of a trial.[9] The Supreme Court held that this was improper for habeas review:

> This Court has never adopted the unreasonable-refusal-to-extend rule on which Respondent relies. It has not been so much as endorsed in a majority opinion, let alone relied on as a basis for granting habeas relief. To the extent the unreasonable-refusal-to-extend rule differs from the one embraced in *Williams* and reiterated many times since, we reject it. Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error.

*White*, 572 U.S. at 426.

The District Court's reasoning in this case mirrors the petitioner's arguments in *Woodall*. *Woodall* makes clear, however, that the failure to extend *Bullcoming* and *Melendez-Diaz* to autopsy reports does not support habeas relief. On this point, the First Circuit's opinion in *Hensley v. Roden* is instructive. There, the Petitioner argued his Confrontation

---

[9] The Supreme Court had previously extended this requirement to the penalty phase in some contexts, but not to the specific scenario encountered in Woodall's state trial. *See White*, 572 U.S. at 420-21.

Clause rights were violated by the use of an autopsy report at his trial. His state court appeal was rejected in 2009, several months after *Melendez-Diaz*. In his federal habeas petition, Hensley argued that relief was appropriate because "*Melendez–Diaz* clearly established that a forensic document is testimonial if it was prepared under circumstances that would lead an objective witness to believe that it would be available for use at a later trial." *Hensley*, 755 F.3d at 734. The First Circuit rejected this attempt to extrapolate, finding habeas relief was inappropriate based on such a theory. *Id.* at 734-35; *see also e.g., Millender v. Johnson*, No. CV 19-2809-KS, 2020 WL 1331053, at *7 (C.D. Cal. Mar. 20, 2020) (rejecting habeas relief for 2018 state appeal) (appeal filed); *Portes v. Capra*, 420 F. Supp. 3d 49, 55 (E.D.N.Y. 2018) (2015 state appeal); *Johnston v. Mahally*, 348 F. Supp. 3d 417, 434-35 (E.D. Pa. 2018) (rejecting refusal to extend argument for autopsy report). Accordingly, the District Court was incorrect to reject Magistrate Cave's Report and conclude that *Bullcoming* was dispositive of petitioner's entitlement to habeas relief. This Court should follow *Hensley* and reject the failure-to-expand argument in the context of autopsy reports.

The District Court also focused heavily on *Bullcoming* and *Melen-dez-Diaz*, yet failed to address the uncertainty in lower courts caused by the Supreme Court's subsequent case in *Williams v. Illinois* (567 U.S. 50 (2012)). In that case, the Court's fragmented opinion concluded that a DNA profile produced by an outside laboratory was non-testimonial.

As relevant here, Justice Breyer issued a concurring opinion, which noted that neither the plurality nor the dissent answered how the Confrontation Clause applied "to the panoply of crime laboratory reports." *Williams*, 567 U.S. at 86 (Breyer, J., concurring). Justice Breyer noted that the "need for cross examination is considerably diminished when the out-of-court statement was made by an accredited laboratory employee operating at a remove from the investigation in the ordinary course of professional work." *Id.* at 95 (Breyer, J. concurring), He explicitly invoked autopsy reports as an example of a business record that serve a vital role in criminal investigations and cautioned that "to bar admission [of such out of court records] could undermine, not fortify, the accuracy of factfinding at a criminal trial." *Id.* at. 97-98.

In *United States v. James* (712 F.3d 79 (2d Cir. 2013)), this Court grappled with *Williams*, noting it created a "intractable problem" with

discerning the Court's controlling principles and how they apply to the introduction of autopsy reports. Judge Eaton filed a separate concurrence, in which he noted that the "unsettled state of the law" precluded a finding that the unpreserved contention was plain error. *Id.* at 108-10 (Eaton, J., concurring). Against this backdrop, Magistrate Cave correctly recognized that the law was not clearly established and the District Court erred in rejecting that conclusion.

The District Court also faulted Respondent for "substitut[ing] conflicts between lower courts" for clearly-established law. On this point, in its response to Petitioner's Objections, Respondent directly cited several Circuit Court cases that found this area of the law unsettled, thus precluding habeas review (A-115 – 1220; 142 – 154. Several of those cases, including *Hensley*, were also cited in Magistrate Cave's report in her discussion as to why the law was not clearly settled (R&R: A-108 p. 58). Respondent (and Magistrate Cave) did not simply rely on lower court merits-based analyses.

In any event, it is entirely appropriate for Respondent to underscore the depth of the lower court divide in support of its position. A discordance this pervasive among legal scholars evinces the absence of clear

guidance and illustrates that the state of the law was unsettled. *Carey v. Musladin*, 549 U.S. 70, 76 (2006) ("Reflecting the lack of guidance from this Court, lower courts have diverged widely in their treatment of defendants' spectator-conduct claims"). Given the lack of applicable holdings from this Court, it cannot be said that the state court unreasonably applied clearly established Federal law. Indeed, one of the Circuit Court cases cited by Respondent before the District Court collected cases on both sides of the relevant divide and noted that "highlighting later or present uncertainty of the law can help us gauge how unsettled the law was at the time the operative state court decision was issued." *Hensley*, 755 F.3d at 733-34 ("When other courts, post *Melendez-Diaz*, have been confronted with the question of whether autopsy reports are testimonial or not, disparity of treatment has reigned."). This Court should find the First Circuit rule persuasive and consider the lower court divide in the wake of *Williams*.

A survey of post-*Melendez-Diaz* cases demonstrates that whether an autopsy report qualifies as a testimonial form of evidence is debatable and, therefore, unsettled. *Compare e.g. James*, 712 F.3d 79; *People v. Dungo*, 55 Cal.4th 608 (Cal. 2012); *People v. Leach*, 2012 IL 111534 (Ill.

2012); *Banmah v. State*, 87 So.3d 101 (Fla. Dist. Ct. App 2012); *with United States v. Ignasiak*, 667 F.3d 1217, 1231 (11th Cir. 2012); *Commonwealth v. Avila*, 454 Mass. 744 n. 20 (Mass. 2009); *Cuesta–Rodriguez v. State*, 241 P.3d 214 (Okla. Crim. App.2010); *see generally Harrison v. Commonwealth*, 2010 WL 5149356, *1 n.1 (Va. Ct. App. Dec. 21, 2010) (collecting cases). The lower court divide following *Melendez-Diaz*, *Bullcoming*, and *Williams* is comprised of fair-minded jurists and demonstrates that this law was not clearly established.

In sum, it was and remains unknown under Supreme Court precedent whether an autopsy report is testimonial under the Confrontation Clause. This Court and its sister Circuit Courts have found the issue unsettled to the extent that it precludes relief. The District Court erred in faulting the Appellate Division for refusing to extend the rule in *Bullcoming* and *Melendez-Diaz* to autopsy reports, particularly because of the significant distinctions between those reports and autopsy reports. *See Vega*, 669 F.3d at 128 n.2. Finally, the lower courts throughout the country have struggled with this exact question. Their divide represents the disagreement of fair-minded jurists that precludes habeas relief. Reversal is warranted.

## C. At the time of the Appellate Division's ruling, it was not clearly established that independent conclusions offered by a testifying expert violate the Confrontation Clause.

The District Court also erred in rejecting Respondent's argument that the independent conclusions of the testifying pathologist did not violate the Confrontation Clause.[10] As noted above, in this case, Dr. Susan Ely relied upon the report in this case, as well as photographs taken during the autopsy, but ultimately gave her independent opinions and conclusions about the victim's injuries. In particular, she opined that the fatal injury was a stab wound to his chest that punctured his skin and perforated his rib cage before traveling between two ribs and perforating his heart. These opinions were subject to meaningful cross-examination.

---

[10] This argument is preserved. Respondent argued before the District Court that the independent conclusions of Dr. Ely did not violate the Confrontation Clause. (Respondent's Memorandum of Law: p.18). Although not required for the party prevailing on this point in the Report and Recommendation (*e.g., United States v. Street*, 917 F.3d 586, 598 (7th Cir. 2019) (collecting cases and noting "Other circuits that have addressed this issue agree that 'a party, who substantially prevails in a magistrate judge's recommendation, does not waive the right to appeal secondary issues resolved against him by failing to object to the recommendation,' for such a requirement would frustrate the purpose of a waiver rule."); *M. v Falmouth School Dept.*, 847 F.3d 19, 26 (1st Cir. 2017)), Respondent argued this point in its response to Petitioner's objections, by, among other things, citing to Justice Breyer's concurrence in *Williams, Nardi v. Pepe* (662 F.3d at 111-112), and a District Court case for this proposition (A-149-150).

The New York State rule on this point has always stressed the importance of independent observations. *People v. Freycinet*, 11 N.Y.3d 38, 42 (N.Y. 2008) ("The giving of opinions was left to Dr. Ambrosi, who testified at trial."). In the wake of *Melendez-Diaz*, the Appellate Division held that the Confrontation Clause is not violated when an expert relies upon potentially inadmissible evidence to form an in-court expert opinion so long as there as an opportunity for cross-examination. *People v. Hall*, 84 A.D.3d 79, 83 (N.Y. App. Div. 2011), *lv. denied* 18 N.Y.3d 924 (N.Y. 2012), *cert. denied* 568 U.S. 855 (2012) ("Furthermore, *Melendez–Diaz* did not address the situation here, where a second expert testified and was fully subject to cross-examination.").In applying this rule to the facts at bar, the Appellate Division's conclusion that a confrontation clause violation had not occurred given petitioner's opportunity to cross-examine the expert witness whose live trial testimony linked him to the crime did not transgress clearly established precedent. [11]

---

[11] In this case, the Appellate Division held that "Defendant's right of confrontation was not violated when an autopsy report prepared by a former medical examiner, who did not testify, was introduced through the testimony of another medical examiner." *Garlick*, 144 A.D.3d at 606, quoting *Acevedo*, 112 A.D.3d at 455. *Garlick* quoted *Acevedo*, which in turn cited *Hall*. Thus, this issue was resolved and is entitled to AEDPA deference.

Significantly, the Supreme Court has not clearly established that the admission of out-of-court statements relied upon by an expert violates the Confrontation Clause. *Nardi*, 662 F.3d at 112; *Hill v. Virga*, 588 F. App'x 723, 724 (9th Cir. 2014); *see Jimenez v. Allbaugh*, 702 F. App'x 685, 688 (10th Cir. 2017) ("The degree to which an expert may reference (let alone rely upon) a report made by another person not called as a witness is not clearly established, particularly given the 4-1-4 divide of the opinions in *Williams v. Illinois*."). In *Williams*, Justice Breyer's concurring opinion highlighted that the Supreme Court had failed to establish clear rules for when an expert could rely upon otherwise inadmissible reports. *See Williams*, 567 U.S. at 91-92 (Breyer, J., concurring) (collecting a non-exclusive list of "approaches to when testifying experts may rely on testing results or reports by nontestifying experts"); *see generally Bullcoming*, 564 U.S. at 673 (Sotomayor, J., concurring in part) ("this is not a case in which an expert witness was asked for his independent opinion about underlying testimonial reports that were not themselves admitted into evidence.").

As such, it was and remains unsettled whether an expert's reliance on statements contained in an autopsy report to form an opinion offends

the Confrontation Clause. *Nardi*, 662 F.3d at 112 ("It is also unclear whether, even if the Court were to so classify [autopsy reports as testimonial], the admissibility of in-court expert testimony that relied in some measure on such a report would be affected. In such a case, a witness is available for cross-examination; and a long tradition exists of allowing experts to rely on hearsay where it is common practice in the profession to rely upon such evidence"); *Millender*, 2020 WL 1331053, at *7 ("Nor is it clearly established that the Confrontation Clause is violated by the admission of out-of-court expert statements that are relied on by another expert who does testify at trial."); *see also Jenkins v. Hall*, 910 F.3d 828, 834 (5th Cir. 2018), *cert. denied*, 140 S. Ct. 65, 205 L. Ed. 2d 80 (2019); *Jimenez*, 702 F. App'x at 687-88. Given the uncertainty that has enshrouded this area of law, habeas relief is unavailable.

Petitioner may attempt to argue that the autopsy report in this case was admitted into evidence. This, however, was the result of defense counsel's strategic choices. After the prosecutor suggested that the report be redacted or otherwise not placed into evidence, defense counsel stated he "would not agree to [the prosecutor's] suggestion" because he did not

see how he could have "an effective cross-examination without the document being placed into evidence" (T 21).

In any event, the Ninth Circuit has correctly noted that it remains unsettled whether "the *admission* of out-of-court statements relied on by an expert violates the Confrontation Clause." *Hill*, 588 Fed App'x at 724. Thus, habeas relief is still inappropriate regardless of whether the report was referenced in Dr. Ely's testimony or formally introduced and admitted into evidence. *See also Millender*, 2020 WL 1331053, at *7 (denying habeas relief where Petitioner contended that his "right to confrontation was violated by the admission of the statements of the coroner who performed the autopsy but did not testify at trial"). Put differently, the Supreme Court has yet to determine whether cross-examination of a surrogate medical examiner constitutes meaningful confrontation to satisfy the dictates of the Sixth Amendment's right to confrontation. As this issue has not been directly addressed by the Supreme Court, the claim cannot provide grounds for habeas relief.

## POINT TWO

**ASSUMING THE TESTIMONIAL NATURE OF AUTOPSY REPORTS WAS CLEARLY ESTABLISHED, THE APPELLATE DIVISION DID NOT UNREASONABLY APPLY THIS PRECEDENT TO THE FACTS OF THIS CASE.**

Respondent maintains that the testimonial nature of autopsy reports remains unsettled and that the District Court erred in concluding otherwise. To the extent that clearly established case law can be gleaned from Supreme Court precedent, however, the District Court also erred in concluding that the Appellate Division's ruling was contrary to controlling precedent. Here, while it may have been foreseeable that an OCME autopsy would be used in an eventual criminal trial, such a contingency was inconsequential to the legal functions of OCME, as an independent laboratory, and it did not transform the primary purpose of performing the autopsy into the creation of evidence for a subsequent prosecution.

The Sixth Amendment provides, among other things, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI.; *Crawford*, 541 U.S. at 36. In *Bullcoming* and *Melendez-Diaz*, the Court held that a forensic report may be testimonial within the contours of the rule in *Crawford*, where the report is created for the primary purpose of

establishing or proving some fact at trial. *Melendez–Diaz*, 557 U.S. at 324; *see also Bullcoming*, 564 U.S. at 669 (Sotomayor, J., concurring in part) ("When the 'primary purpose' of a statement is 'not to create a record for trial,' 'the admissibility of the statement is the concern of state and federal rules of evidence, not the Confrontation Clause.' " (quoting *Michigan v. Bryant*, 562 U.S. 344, 358 (2011)).

Applying these federal standards, New York's jurisprudence holds that autopsy reports are not testimonial. In *Freycinet* (11 N.Y.3d 38 (2008)), the New York Court of Appeals held that a redacted autopsy report was non-testimonial. Like the Supreme Court of the United States, New York refused to adopt an absolute rule that business records were non-testimonial and, instead, evaluated the totality of the circumstances, including "various indicia of testimonality" to distill the document's primary purpose. *Freycinet*, 11 N.Y.3d at 41. In particular, the court noted "the extent to which the entity conducting the procedure is an arm of law enforcement," "whether the contents of the report are a contemporaneous record of objective facts, or reflect the exercise of fallible human judgment," "whether a pro-law-enforcement bias is likely to influence the contents of the report," and "whether the report's contents are directly

accusatory in the sense that they explicitly link the defendant to the crime" were important factors to consider. *Id.* (cleaned up). The courts of New York State have not retreated from this analysis. *John*, 27 N.Y.3d at 315; *Hall*, 84 A.D.3d at 82-85. In applying this rule, the Appellate Division's ruling was not an unreasonable application of federal law.

The autopsy report in this case cannot be categorized as testimonial because it was not created for the primary purpose developing evidence for use at a later criminal trial. The OCME is an independent agency that conducts autopsies pursuant to a statutory mandate. *See James*, 712 F.3d at 97-99 (finding autopsy report nontestimonial when it was conducted by OCME prior to criminal investigation); *United States v. Feliz*, 467 F.3d 227, 236-37 (2d Cir. 2006) (describing independence of the OCME); *People v. Washington*, 86 N.Y.2d 189, 193 (1995) (finding that OCME is "by law, independent of and not subject to the control of the prosecutor's office.").[12] While it may be foreseeable that an autopsy report would be used in a criminal prosecution, such foreseeability does not

---

[12] In *Feliz*, this Court found that autopsy reports were nontestimonial based primarily on their status as a business record. *Feliz*, 467 F.3d at 236-38). While this categorical rule was cast into doubt by *Melendez-Diaz* and *Bullcoming* (*see James*, 712 F.3d at 94), *Feliz* nevertheless correctly describes OCME's independence as a laboratory. This is an important factor in a merits analysis.

transform the intent of an independent organization that prepares autopsies for "numerous other reasons—including the determination of cause of death when there is no anticipation of use of the autopsy in any kind of court proceeding." *Vega*, 669 F.3d at 128 (denying habeas relief). Thus, the autopsy reports at issue are not the sworn affidavits with the "sole purpose" of proving prima facie evidence for Petitioner's trial that the Court was faced with in *Melendez-Diaz*, 557 U.S. at 310. Put differently, the primary purpose of OCME is to neutrally discharge its statutory obligations, not to create testimony for a future prosecution. *See James*, 712 F.3d at 97-99; *Portes v. Capra*, 420 F. Supp. 3d 49, 55 (E.D.N.Y. 2018).

Importantly, the status of the criminal investigation into petitioner's wrongdoing at the time had no relationship to the statutory duties that required OCME to conduct an autopsy on the victim here; nor did it have any bearing on the creation of the actual report. While the detectives were present during the autopsy, nothing in the record indicates that the medical examiner knew about their suspicions or the status of the investigation. She had received a report from a doctor at St. Barnabas Hospital that stated that Sherwood had been found by EMS in

cardiac arrest with multiple stab wounds to his chest and abdomen (A-289, 291)[13] Additionally, according to the "Supplemental Case Information" form, which had been completed prior to the autopsy, Det. DeGrazia informed an OCME representative by phone only that, "the case is pending further information and no additional information is available" (A-289). Similarly, the "Notice of Death" form offered no additional information with respect to a police investigation (A-290) and a police report, which had been completed on the same day as the autopsy, explicitly stated "Victim was assaulted and stabbed by unknown perp(s) for unknown reason" (A-292). Critically, the medical examiner was not aware of any targeted suspect: no suspect was identified in the autopsy report or in the medical examiner's files. Accordingly, the relationship between the OCME and law enforcement "both generally and in this particular case" supports a finding that the report is not testimonial. *James*, 712 F.3d at 97.

Further, the report at issue is not testimonial because it was not "inherently inculpatory." *Williams*, 567 U.S. at 57-58, 82 (plurality

---

[13] It also matters little that Petitioner was indicted by the time the autopsy report was certified as a business record, particularly because this certification did not bear upon or change any of the facts in the report.

opinion). Nor did it have the impact of accusing a targeted individual. *Id.* at 82-83. Indeed, it could have offered powerful evidence mitigating Petitioner's guilt, as argued by defense counsel. The report could have supported other defenses, such as justification and also tended to exonerate individuals, including Johanna Rivera, who was eliminated as a potential cause of the victim's death upon review of the autopsy report.

Nor does the report at issue contain indicia of solemnity that would render it testimonial. *Williams*, 567 U.S. at 110-11 (Thomas, J., concurring), quoting *Davis v. Washington*, 547 U.S. 813, 836-37 (2006) (Thomas, J., concurring). The report contains a New York certification that the report is kept as a business record, which relates only to compliance with an unrelated admissibility requirement in New York. (A-275) *See* N.Y. C.P.L.R. 4518. The report also contains the signature of Dr. Maloney, at two locations (A-281, A-283). While this indicates that Dr. Maloney performed the autopsy, and is relevant to recordkeeping and informs OCME who to contact regarding the report, it is not an attestation to the accuracy of the underlying contents. Notably, unlike the report in *Melendez-Diaz*, the report is not signed before a notary public or otherwise affirmed that its contents are correct. *Williams*, 567 U.S. at 112 (Thomas, J.,

concurring) (distinguishing the report in *Williams* from the affirmed statements in the report in *Melendez-Diaz* on this basis). Thus, the autopsy report cannot be credibly likened to unconfronted sworn testimony.

Finally, even if the report at issue were testimonial, there was no Confrontation Clause violation because Dr. Ely's in-court opinion was subject to cross examination. Indeed, defense counsel adroitly underscored the informational limitations of Dr. Ely's testimony, eliciting on cross-examination that she did not know the identity or approximate height of the person who stabbed Sherwood, could not specify whether the assailant was right-handed or left-handed, and had not been able to determine the order in which the stab wounds were inflicted. It thus comes as no surprise that counsel sought to bring these weaknesses in the State's case to the fore by explicitly requesting the autopsy be admitted into evidence. Accordingly, petitioner cannot now claim a constitutional violation on this basis, where the report was introduced for the mere purpose of permitting Dr. Ely to express an expert opinion. *See Williams*, 567 U.S. 68-70 (plurality opinion).

Once again, this Court need not address this issue if it agrees with Respondent's argument in Point I that the law was not clearly

established. To the extent it disagrees, however, petitioner is still not entitled to the writ since the Appellate Division's determination fully comports with this Court's precedent following *Melendez-Diaz*, *Bullcoming*, and *Williams* that autopsy reports generated by OCME are not testimonial. *Feliz*, 467 F.3d at 236-37. *James*, 712 F.3d at 97-99.

**POINT THREE**

**ANY POTENTIAL CONFRONTATION CLAUSE ERRORS WERE HARMLESS.**

Even assuming the introduction of the autopsy report contravened clearly established law, the error was harmless. The prosecution's case was strong and contained powerful proof that featured a graphic video of Petitioner killing his victim. Further, the report was cumulative to other proof that established the same facts, rendering it largely inconsequential. In this case, it was undisputed that Petitioner caused the death of the victim. Independent of the report, the People's witnesses, taken together with petitioner's confession and the video depicting him committing the slaying amply justified the jury's verdict.

The erroneous admission of evidence in violation of the Confrontation Clause is subject to harmless error analysis. *See Bullcoming*, 564 U.S. at 668 n.11. In conducting harmless error review of a Confrontation

Clause violation, this Court analyzes whether the violation resulted in "actual prejudice" to the Petitioner. *Perkins v. Herbert*, 596 F.3d 161, 177 (2d Cir. 2010). Under this standard, errors are harmless for purposes of habeas review unless the error had a "substantial and injurious effect" on the verdict. *See Fry v Pliler*, 551 U.S. 112, 116-117 (2007); *see Brecht v. Abrahamson*, 507 U.S. 619 (1993). This standard applies to review of Constitutional errors even when the state court does not expressly reach the issue of harmlessness. *See Fry,* 551 U.S. at 121-22; *Penry v. Johnson*, 532 U.S. 782, 795 (2001) (applying *Brecht* standard where Texas Court of Appeals had not reached the issue of harmlessness).

In evaluating whether a Confrontation Clause violation had a substantial and injurious effect, this Court applies the five-factor test articulated in *Delaware v. Van Arsdall*. That tests considers "(1) the overall strength of the prosecution's case; (2) the importance of the witness's testimony; (3) whether the testimony was cumulative; (4) the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points; and (5) the extent of cross-examination otherwise permitted." *Alvarez v. Ercole*, 763 F.3d 223, 233 (2d Cir. 2014), quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986).

At the outset, there is some difficulty gauging the potential prejudicial impact of a Confrontation Clause violation in light of the unsettled state of Supreme Court precedent which, as discussed, independently required denial of the writ. For instance, if the Confrontation Clause prohibits any reference to an autopsy report, the analysis is straightforward insofar as this Court can consider the impact of any reference to the report in analyzing the question of harmlessness.

If, by contrast, the Confrontation Clause allows for some degree of reliance by an expert on otherwise inadmissible hearsay to formulate an opinion, the analysis becomes far more accommodative to a finding of harmlessness. *See Williams*, 567 U.S. at 91-92 (Breyer, J., concurring) (collecting "approaches to when testifying experts may rely on testing results or reports by nontestifying experts"); *see also Bullcoming*, 564 U.S. at 673, (Sotomayor, J., concurring in part) ("this is not a case in which an expert witness was asked for his independent opinion about underlying testimonial reports that were not themselves admitted into evidence."); *Nardi*, 662 F.3d at 112. Under those circumstances, the jury could permissibly learn of the operative facts underpinning the analysis and, in consequence, an improperly admitted report would be rendered

cumulative. Indeed, Justice Breyer's concurrence in *Williams* outlines a number of potential approaches that could be taken with respect to the admissibility of such testimony, any one of which could alter the cumulative nature of the report. *See Williams*, 567 U.S. at 91-92 (Breyer, J., concurring). This sticky wicket in the prejudice analysis highlights the unsettled nature of the Confrontation Clause on this point.

For the sake of this analysis, Respondent assumes, but does not concede, that the Confrontation Clause prohibits any reference to an autopsy report through surrogate testimony. Even applying this favorable rule, Petitioner cannot prevail. *Fry*, 551 U.S. at 116. Analysis of the five *Van Arsdall* factors supports Respondent's position. First, the strength of the People's case was compelling. The proof at trial included Petitioner's confession in which he acknowledged fighting with the victim and admission that he wrestled an object away as the two scuffled in the building lobby. Video surveillance from the building lobby shows Petitioner repeatedly thrusting an object into the victim's chest. After the victim collapsed on to the floor, the video shows that Petitioner continued to stand over him and strike him in the chest several more times.

When police arrived at the scene, officers observed Sherwood bleeding on the floor (T. 158 [observing blood "next to the body"]) and exhibiting no signs of life. The Report and Recommendation correctly notes that Sherwood "was found with stab wounds and could not be revived" after the attack (R&R: A-112; p.62)). EMS transported petitioner to the hospital where he exhibited no signs of life and was pronounced dead soon after his arrival.

As to the second, third, and fourth factors, Dr. Ely's testimony was immaterial and cumulative. The other trial evidence adduced, including Petitioner's own confession and surveillance of the incident, established that he disarmed Sherwood and subsequently stabbed him to death in the building lobby. Plainly, the autopsy report did not contribute to the verdict.

The final factor, the extent of the cross-examination permitted, also militates toward a determination that the error was harmless. At trial, petitioner made extensive use of his opportunity to cross-examine the expert about her opinions and conclusions tying him to the crime. On balance, the factors support a finding of harmlessness.

Overlooking the strength of the State's case's and myriad of evidentiary sources from which the proof demonstrating petitioner's guilt derived, the Report and Recommendation overstated the probative value of the report. To this end, the Report incorrectly stated that the autopsy report constituted the only proof that the multiple stab wounds, and not Rivera's kicks and punches, caused the victim's death. But this finding disregards the fact that no reasonable juror viewing the surveillance could escape the conclusion that after disarming the victim, petitioner, who was the only other adult male depicted on video, inflicted multiple stab wounds onto the victim that led him to bleed profusely and ultimately succumb to his injuries. The video clearly shows that Joanna's involvement was limited to employing ordinary, non-lethal force that could not have supported any inference that she was responsible for producing the wounds that resulted in Sherwood's death; no one else is seen approaching Sherwood's limp body after petitioner exits the camera frame Accordingly, the admission of the autopsy report did not have a substantial and injurious effect on this verdict.

Nor is the autopsy report the only evidence of Petitioner's intent. It is well established in New York that intent can be inferred from the

natural consequences of one's actions. *See, e.g., People v. Moore*, 184 A.D.2d 1042 (N.Y. App. Div. 1992) ("a finding of intent to kill was inferable from the circumstances, including the multiple stab wounds suffered by the victim, the fact that defendant continued to stab the victim until he collapsed"); *see People v. Horton*, 18 N.Y.2d 355, 359 (N.Y. 1966). Here, the jury inferred Petitioner's intent to kill from his stabbing the victim multiple times. The most potent proof of petitioner's intent came from the graphic surveillance video, not the autopsy report. It should also be noted that New York state courts have long held that a defendant's actions subsequent to a crime are proper evidence of his guilt. *Mallette v. Scully*, 752 F.2d 26, 32 (2d Cir. 1984), citing *People v. Conroy*, 97 N.Y. 62, 80 (N.Y. 1884) (falsehoods and evasions to escape the imputation of crime may be considered by the jury on the issue of evil intent). Here, petitioner immediately fled the scene and, when finally apprehended, admitted to fighting Sherwood. These circumstances foreclosed any doubt that Petitioner lacked the required injurious intent.

On this point, while the autopsy report and the testimony of Dr. Ely disproved the defense's dubious position that Rivera's kicks and punches were the actual cause of Sherwood's death, it also provided Petitioner

with useful information that he used to his advantage in order to under-
mine the State's case. In summation, the People hardly focused on the
uncontested evidence in the autopsy report. T. 450 ("in this case you got
the crime on videotape and that's really all you need."). By contrast, de-
fense counsel argued at length that the depth of the cuts evidenced a de-
fensive mindset and undercut any proof of homicidal intent. T. 424-26.
("seven cuts, two of which were stabs. Not seven stabs.") ("similar to an
accidental cut with a knife as if you were in the kitchen") ("superficial-
type injuries. Lateral slicing, superficial injuries"). Had the report been
excluded from evidence, Petitioner would have had far greater difficulty
attempting to deaden the sting of a video showing his client repeatedly
stabbing a man on the ground. Without the autopsy report, there was no
other proof upon which defense counsel could have credibly relied to es-
tablish a reasonable doubt as to who committed the killing.

Indeed, when confronted with similar factual situations on habeas
review, courts have predominantly found any potential error harmless.
*Millender*, 2020 WL 1331053, at *7 (admission of autopsy report harm-
less where it provided beneficial details that supported a defense that a
shooting was accidental and was only relevant to the cause of death);

*Alger v. MacDonald*, No. 15-CV-04568-WHO, 2018 WL 3054757, at *12 (N.D. Cal. June 20, 2018), *certificate of appealability denied* No. 18-16339, 2019 WL 7602252 (9th Cir. Sept. 27, 2019) (introduction of autopsy report harmless where defense cross-examined state witness on manner of cause of death and presented arguments based on that evidence in support of his chosen theory); *Davidson v. Bowersox*, No. 4:11CV79 NCC, 2014 WL 942738, at *7 (E.D. Mo. Mar. 11, 2014) (admission of the autopsy report harmless where eyewitness testimony established that the defendant shot at the vehicle and killed the victim). As in these persuasively reasoned cases, the introduction of the autopsy report here did not have a "substantial and injurious effect" on the verdict, thus, any error in its admission was harmless. *Brecht*, 507 U.S. 619.

## CONCLUSION

**THE OPINION OF THE DISTRICT COURT SHOULD BE REVERSED AND THE PETITION FOR A WRIT OF HABEAS CORPUS SHOULD BE DISMISSED.**

Respectfully Submitted,

DARCEL D. CLARK
District Attorney
Bronx County
*Attorney for Respondent*

BY:

_____/S/_____
NANCY D. KILLIAN
Assistant District Attorney

_____/S/_____
PETER D. CODDINGTON
Assistant District Attorney

_____/S/_____
JOSHUA P. WEISS
Assistant District Attorney

_____/S/_____
ROBERT C. MCIVER
Assistant District Attorney

August 28, 2020

## CERTIFICATE OF COMPLIANCE

I, Joshua P. Weiss, an attorney duly admitted to practice in this Court, do hereby certify that this brief, filed on behalf of Respondent-Appellee, complies with the type-volume limitation set forth in Local Rule 32.1(a)(4)(A). Based on the word count of our word-processing system, the brief contains 10,527 words.

_____/S/_____

Joshua P. Weiss
Assistant District Attorney

August 31, 2020