# 20-1796

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

JAMES GARLICK,

PETITIONER-APPELLEE,

-AGAINST-

### WILLIAM LEE,
### SUPERINTENDENT OF EASTERN CORRECTIONAL FACILITY

RESPONDENT-APPELLANT.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

REPLY BRIEF FOR RESPONDENT-APPELLANT

NANCY D. KILLIAN
PETER D. CODDINGTON
JOSHUA P. WEISS
ROBERT C. MCIVER
ASSISTANT DISTRICT ATTORNEYS
    OF COUNSEL

DARCEL D. CLARK
DISTRICT ATTORNEY
BRONX COUNTY
ATTORNEY FOR RESPONDENT
BRONX, NEW YORK 10451
(718) 838-6229

# TABLE OF CONTENTS

Table of Authorities ................................................................................ i

Introduction ................................................................................ 1

Statement of the Facts ................................................................................ 3

Argument ................................................................................ 4

Point:

The District Court erred in granting the petition. The inapposite Supreme Court cases relied upon by petitioner do not clearly establish the novel issues presented in this case. ................................................................................ 4

    A. The Supreme Court has not clearly established that autopsy reports are testimonial. Petitioner's arguments to the contrary are at odds with all relevant case law (Responding to Opposition Brief, Point 1 A-B). ................................................................................ 4

    B. Supreme Court precedent has not clearly established that expert reliance on an autopsy report violates the Confrontation Clause. The People never waived this argument (Responding to Opposition Brief, Point 1C). ................................................................................ 16

    C. It is unnecessary to resolve whether the District Court correctly determined that the Appellate Division's ruling was not "contrary to" Supreme Court precedent (Responding to Opposition Brief, Point 1D and 1E). ................................................................................ 21

    D. Any potential error in admitting the report or any independent testimony referencing the report was harmless (Responding to Opposition Brief, Point 1F). ................................................................................ 22

Conclusion ................................................................................ 26

Certificate of Compliance ................................................................................ 27

TABLE OF AUTHORITIES

# Cases

*Alger v. MacDonald*, No. 15-CV-04568-WHO, 2018 WL 3054757 (N.D. Cal. June 20, 2018), *certificate of appealability denied* No. 18-16339, 2019 WL 7602252 (9th Cir. Sept. 27, 2019);...................................................................................................... 24

*Bullcoming v. New Mexico*, 564 U.S. 647 (2011) ......................................................... 4

*Carey v. Musladin*, 549 U.S. 70 (2006) ...................................................................... 13

*Crawford v. Washington*, 541 U.S. 36 (2004).............................................................. 5

*Culton v. Arnold*, No. 14-CV-05099-JST, 2016 WL 3049731, (N.D. Cal. May 31, 2016) ....................................................................................................................... 14

*Davidson v. Bowersox*, No. 4:11CV79 NCC, 2014 WL 942738 (E.D. Mo. Mar. 11, 2014) ....................................................................................................................... 25

*Greene v. Fisher*, 565 U.S. 34 (2011) ............................................................................ 6

*Hacheney v. Obenland*, 732 F. App'x 541 (9th Cir. 2018) ......................................... 14

*Hensley v. Roden*, 755 F.3d 724 (1st Cir. 2014)........................................................ 6, 7

*Johnston v. Mahally*, 348 F. Supp. 3d 417 (E.D. Pa. 2018)................................. 11, 12

*Keshner v. Nursing Pers. Home Care*, 794 F.3d 232 (2d Cir. 2015) .......................... 16

*Lockyer v. Andrade*, 538 U.S. 63 (2003) ..................................................................... 10

*McBee v. Burge*, 395 F. App'x 762 (2d Cir. 2010) ...................................................... 22

*McNeiece v. Lattimore*, 501 Fed Appx 634 (9th Cir. 2012) ......................................... 7

*Melendez-Diaz v. Massachusetts* (557 U.S. 305 (2009)................................................. 4

*Millender v. Johnson*, No. CV 19-2809-KS, 2020 WL 1331053, at *7 (C.D. Cal. Mar. 20, 2020) ............................................................................................................. 8, 24

*Mitchell v. Kelly*, 520 Fed. App'x. 329 (6th Cir. 2013) ............................................... 6

*Nardi v. Pepe*, 662 F.3d 107 (1st Cir. 2011)............................................................... 6

Nevada v. Jackson, 569 U.S 505 (2013 .................................................... 21

*People v. Freycinet* 11 N.Y.3d 38 (N.Y. 2008) ............................................................ 18

*People v. John* 27 N.Y.3d 294 (N.Y. 2016) ................................................................. 18

*Portes v. Capra*, 420 F. Supp. 3d 49 (E.D.N.Y. 2018). ................................................. 8

*United States v. James*, 712 F.3d 79 (2d Cir. 2013) ............................................. 5, 10

*United States v. Pablo*, 696 F.3d 1280(10th Cir. 2012) ............................................. 19

*United States v. Parisi*, 821 F.3d 343 (2d Cir. 2016) ................................................ 16

*Vega v. Walsh*, 669 F.3d 123 (2d Cir. 2012) ................................................................. 6

*White v Woodall* 572 U.S. 415 (2014)) .................................................................. 5, 10

*Williams v. Illinois* 567 U.S. 50 (2012) ................................................................. 8, 19

## Federal Statutes and Constitution

28 U.S.C. § 2254(d)(1) ............................................................................................. 2, 21

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
-------------------------------------------------------------------------X
JAMES GARLICK,

PETITIONER-APPELLEE,

-AGAINST-                                          DOCKET NO. 20-1796

WILLIAM LEE,
SUPERINTENDENT OF EASTERN CORRECTIONAL FACILITY,

RESPONDENT-APPELLANT.
-------------------------------------------------------------------------X
ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## INTRODUCTION

The District Court improperly rejected the recommendation of the
Magistrate and granted petitioner's habeas corpus petition. Specifically,
the District Court found that petitioner's Confrontation Clause rights
were violated when the People introduced an autopsy report through the
testimony of a medical examiner who was not present at the autopsy.
That medical examiner was also permitted to offer independent conclu-
sions based on the facts contained in the report. Given the absence of
clearly established federal precedent as to these issues, the petition
should have been denied.

In our opening brief to this Court, the People argued that the District Court erred in finding this area of the law "clearly established" at the time of petitioner's direct appeal in 2016 as required by 28 U.S.C. § 2254 (d). The People argued that Supreme Court has never clearly established that autopsy reports are testimonial under the Confrontation Clause. The People further argued that it was not clearly established that the Confrontation Clause prohibits an expert from offering independent conclusions based on an otherwise inadmissible report. Finally, the People argued that the admission of the report did not violate the Confrontation Clause and that any potential error was harmless.

In his opposition brief, petitioner defends the District Court's determination, claiming that the Supreme Court cases *Melendez-Diaz v. Massachusetts* (557 U.S. 305 (2009)) and *Bullcoming v. New Mexico* (564 U.S. 647 (2011)), sufficiently established that autopsy reports are testimonial. Petitioner further asserts that the People waived their argument that the Supreme Court has not established whether an expert may testify as to independent conclusions based on an autopsy report without violating the Confrontation Clause. Petitioner argues that any such claim is

meritless. Petitioner also defends the District Court's finding by contending that any purported error was not harmless.

Petitioner is wrong on the law, and the District Court erred in concluding that this area of the law was clearly established for AEDPA habeas relief. Federal habeas precedent, including precedent from this Court, supports the People's position. Therefore, reversal of the District Court's outlier opinion is warranted.

## STATEMENT OF THE FACTS

The facts of the case are set forth at pages four through seventeen of the People's Appellant's Brief.

## ARGUMENT

## POINT

**THE DISTRICT COURT ERRED IN GRANTING THE PETITION. THE INAPPOSITE SUPREME COURT CASES RELIED UPON BY PETITIONER DO NOT CONSTITUTE CLEARLY ESTABLISHED PRECEDENT ON THE NOVEL ISSUES PRESENTED IN THIS CASE.**

The District Court in this case is the only federal court to have granted AEDPA habeas relief on the basis that a defendant has a clearly established right to confront the author of an autopsy report. Petitioner asks this Court to part ways with all other courts that have decided this issue otherwise and advances a series of arguments at odds with Supreme Court habeas case law.

**A.      The Supreme Court has not clearly established that autopsy reports are testimonial. Petitioner's arguments to the contrary are at odds with all relevant case law (Responding to Opposition Brief, Point 1 A-B).**

In his brief in opposition, petitioner asserts that he is not required to cite Supreme Court precedent which holds that an autopsy report is testimonial (Opposition Brief, 36-39). Rather, he contends that the Supreme Court, in *Melendez-Diaz v. Massachusetts* (557 U.S. 305 (2009)) and *Bullcoming v. New Mexico* (564 U.S. 647 (2011)), handed down a rule of law that sufficiently established that autopsy reports are testimonial.

He further argues that the District Court's ruling is not a "failure to extend" analysis which is prohibited by *White v. Woodall* (572 U.S. 415, 419 (2014)). Rather, he contends that the District Court merely applied clearly established legal principles to the facts of this case. These two arguments, however, invite this Court to adopt the District Court's misapplication of AEDPA. It should decline to do so. Given the Supreme Court's approach to Confrontation Clause cases and the significant differences between autopsy reports and the reports in *Melendez-Diaz* and *Bullcoming*, this area of the law remains unsettled and precludes habeas relief.

In addressing the Confrontation Clause, the Supreme Court has repeatedly "declined to spell out a comprehensive definition of testimonial." *United States v. James*, 712 F.3d 79, 90 (2d Cir. 2013); *see Crawford v. Washington*, 541 U.S. 36, 68 (2004) ("We leave for another day any effort to spell out a comprehensive definition of 'testimonial.' "). Rather, the Supreme Court takes a gradualist, case-by-case approach in delineating the contours of what constitutes testimonial evidence. Petitioner therefore wrongly concludes that the reports addressing cocaine tests in *Melendez-Diaz* and blood alcohol tests in *Bullcoming* will necessarily control the

classification of autopsy reports. *Vega v. Walsh*, 669 F.3d 123, 128 n.2 (2d Cir. 2012) (noting that *Melendez-Diaz* and *Bullcoming* did not clearly render autopsies testimonial due to the "significant differences between narcotics and blood alcohol analyses and autopsies."); *Nardi v. Pepe*, 662 F.3d 107, 111 (1st Cir. 2011) ("Abstractly, an autopsy report can be distinguished from, or assimilated to, the sworn documents in *Melendez–Diaz* and *Bullcoming*, and it is uncertain how the Court would resolve the question."). So, while petitioner is correct that he does not have to find a case directly on all-fours, his argument that the general principles of cases like *Melendez-Diaz* will apply to autopsy reports is not so certain as to show an "extreme malfunction" in the state criminal justice system. *Hensley v. Roden*, 755 F.3d 724, 734-35 (1st Cir. 2014) (quoting *Greene v. Fisher*, 565 U.S. 34, 36 (2011)).

As noted in the People's main brief, habeas courts around the country have considered and rejected petitioner's contention that the right to confrontation encompasses the creators of autopsy reports. *E.g.*, *Hensley*, 755 F.3d at 732 (denying habeas petition arguing admission of autopsy report was error because "*Melendez-Diaz* did not say one way or the other whether autopsy reports should be considered testimonial."); *Mitchell v.*

*Kelly*, 520 Fed. App'x. 329, 331 (6th Cir. 2013) (finding state court did not unreasonably apply *Crawford* in holding autopsy report was not testimonial); *Vega*, 669 F.3d at 127; *McNeiece v. Lattimore*, 501 Fed App'x 634, 636 (9th Cir. 2012); *see also* Appellant's Brief, 21-23 (collecting cases)). These cases should control the outcome here.

Petitioner dismisses this body of law, arguing that these cases involved state court opinions that preceded *Bullcoming* and *Melendez-Diaz*.[1] This is not true for *Hensley v. Roden*, which fully considered *Melendez-Diaz*. *See Hensley*, 755 F.3d at 731-32. Petitioner counters that *Hensley* preceded *Bullcoming*. This contention ignores that the Supreme Court found the reports in *Melendez-Diaz* and *Bullcoming* were the same "[i]n all material respects." *Bullcoming*, 564 U.S. at 664. Further, given the Supreme Court's case-by-case approach to testimoniality, the distinction between cocaine result reports and blood alcohol content reports places petitioner no closer to demonstrating that autopsy reports are clearly established as testimonial. *See Vega*, 669 F.3d at 128 n.2. Other persuasive cases interpreting post-*Bullcoming* state opinions have found this area

---

[1] Petitioner does nothing to attack the litany of persuasive District Court cases around the country which specifically involve state decisions that have the full benefit of *Bullcoming*, *Melendez-Diaz*, and *Williams v. Illinois*. *E.g., Millender v. Johnson*, No. CV 19-2809-KS, 2020 WL 1331053, at *7 (C.D. Cal. Mar. 20, 2020); *Portes v. Capra*, 420 F. Supp. 3d 49, 55 (E.D.N.Y. 2018).

unsettled, and preclusive of habeas relief. *E.g., Millender v. Johnson*, No. CV 19-2809-KS, 2020 WL 1331053, at *7 (C.D. Cal. Mar. 20, 2020); *Portes v. Capra*, 420 F. Supp. 3d 49, 56 (E.D.N.Y. 2018).

Moreover, while petitioner notes minor differences in the issues presented in *Bullcoming* and *Melendez-Diaz*, the *Hensley* court did not resolve its issue on the narrow distinctions between those two cases. Rather, it reached the full-throated conclusion that "the Supreme Court had given no clear answers relative to th[e] issue" of whether autopsy reports are testimonial. *Hensley*, 755 F.3d at 735. Although *Hensley* preceded *Bullcoming* as petitioner argues, it also preceded *Williams v. Illinois* (567 U.S. 50 (2012)), which further evinced the unsettled nature of the Court's Confrontation Clause precedent. *James*, 712 F.3d at 95 (noting *Williams* had caused an "intractable" problem with applying Confrontation Clause precedent to future cases including autopsy reports). In short, the timing of *Hensley* does nothing to undercut its persuasiveness.

Petitioner also dismisses this Court's holding in *Vega v. Walsh*. In that case, this Court specifically noted "a fair issue exists as to whether the Appellate Division's decision would have been contrary to or an unreasonable application of *Melendez–Diaz* or *Bullcoming*." *Vega*, 669 F.3d

at 128 n.2. Petitioner argues this this is simply footnoted dictum. Opposition Brief, 50. While this Court's statement is persuasive standing alone, it is especially forceful because it is aligned with all relevant case law on this issue. This Court should follow its own instruction and reverse the District Court.

Petitioner next misconstrues this Court's ruling in *United States v. James*. Opposition Brief, 50-51. The People cited this case as demonstrative of how unsettled the law was in the wake of *Bullcoming*, *Melendez-Diaz*, and *Williams*. *James* described the difficulty in interpreting the Confrontation Clause, particularly after *Williams v. Illinois*. *James*, 712 F.3d at 95. Petitioner argues that *James* supports his position because the autopsy report was created under different circumstances than the autopsy in the case at hand. Opposition Brief, 51-52. Whatever the differences between the autopsies in this case and in *James*, that case does nothing to show that Confrontation Clause precedent was clearly established in the wake of *Williams*.[2] Petitioner's position implicitly argues that this Court struggled with a crystal-clear area of law.

---

[2] Moreover, the *James* Court's finding that the report in that case *was not testimonial* does nothing to show that the report in this case is.

With respect to Judge Eaton's concurring opinion in *James*, petitioner argues that it is non-binding. Opposition Brief, 51. Judge Eaton found that due to "the unsettled state of the law" the admission of an autopsy report through surrogate testimony did not constitute plain error. *James*, 712 F.3d at 108. Because clear error is a more searching inquiry than AEDPA deference, this provides strong support for the People's position. *Woodall*, 572 U.S. at 419 (AEDPA deference requires that holdings must be "objectively unreasonable, not merely wrong; even 'clear error' will not suffice."); *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). Because of the significant differences between autopsy reports and the reports in *Melendez-Diaz* and *Bullcoming*, those cases do not clearly establish the testimoniality of autopsy reports.

In a related vein, petitioner argues that the District Court engaged in an improper "failure to extend" analysis. Relying upon his argument that Melendez-Diaz and Bullcoming govern autopsy reports, petitioner claims the District Court merely applied settle legal principles to the new facts of this case. Petitioner further asserts that the People misapply *White v Woodall* (572 U.S. 415 (2014)). Opposition Brief, 38-39. A closer examination of *Woodall, however,* supports the People's position.

*Woodall* made clear that habeas relief would not lie for a failure to extend argument. In distinguishing between factual applications and failure to extend, the Court instructed:

> "The difference between applying a rule and extending it is not always clear, but certain principles are fundamental enough that when new factual permutations arise, the necessity to apply the earlier rule will be beyond doubt. The critical point is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no fair-minded disagreement on the question."

*Woodall*, 572 U.S. at 427 (cleaned up); *see also Harrington v. Richter*, 562 U.S. 86, 103 (2011).

At this juncture, it is unclear what rule from *Williams v. Illinois* or any other recent *Crawford* case will apply to autopsy reports. Nor could anybody say with certainty whether the Supreme Court will apply a different test for testimoniality to autopsy reports when the issue eventually reaches the Court. Further, whatever rule is adopted, it is not so obvious how this will apply to autopsy reports. Accordingly, petitioner wrongly asserts that this is a mere factual application. The District Court improperly faulted the Appellate Division for failing to extend the rationale of *Bullcoming* and *Melendez-Diaz* to autopsy reports.

In a recent case, a District Court adopted this reasoning. In *Johnston v. Mahally*, 348 F. Supp. 3d 417, 434-35 (E.D. Pa. 2018), the Eastern District of Pennsylvania confronted whether the rule in *Crawford* or *Melendez-Diaz* could simply be extended to autopsy reports. Citing the above rule in *Woodall*, it held that such a holding would be an improper failure-to-extend rule. The court noted that there was no clearly established law concerning autopsy reports and that circuit courts disagreed as to how to apply precedent to autopsies in a way that reflected fair-minded disagreement. *Johnston*, 348 F. Supp. 3d at 435.

Although not as express as the District Court in *Johnston*, the First Circuit in *Hensley* rejected a similar argument. *See Hensley*, 755 F.3d at 734. Hensley argued that the "general principles" of *Melendez-Diaz* could be discerned and applied to autopsy reports. The First Circuit rejected this argument, finding that there were "no clear answers relative to this issue." *Id.* at 735. Accordingly, petitioner advances a veiled failure-to-extend argument to the unique issue of autopsy reports. It should be rejected.

Next, petitioner argues that the People improperly relied upon a lower-court split to show that this issue was unsettled. Petitioner cites

the District Court in this case and argues that "it is the word of the Supreme Court" that drives the inquiry. Opposition Brief, 40-41. On this point, petitioner cites cases that cautioned against requiring "unanimous consensus in the context of a [habeas petition]." Opposition Brief, 40 (quoting *Walczyk v. Rio*, 496 F.3d 139, 170 (2d Cir. 2007)).

This argument misconstrues the People's position. The People have never argued that an area of the law cannot be clearly established unless there is unanimity among the state and federal courts. Rather, the People have always argued that the deep divide among lower courts reflects the exact kind of disagreement between fair-minded jurists that is preclusive to the claim.[3] Put succinctly, the discord reflects that there are reasonable arguments on both sides of the issue. In order to prevail, this is all the People are required to show.[4] And here, we have. *Woodall*, 572 U.S. at 427; *see* Appellant's Brief, 29-31. The Supreme Court had cited splits

---

[3] In his certiorari petition, petitioner argued at length that the Supreme Court has failed to provide guidance on whether autopsy reports are testimonial and that this lack of guidance resulted in an intractable divide that required the Court's resolution of the issue. A-194-202.

[4] Petitioner plainly asserts that "the lower-court poll weighs heavily in Mr. Garlick's favor. At least 10 state/federal appellate courts have found autopsy reports to be testimonial, while far less have found to the contrary." For this proposition, he cites to two footnotes in the Report and Recommendation, which were not an effort to provide a comprehensive poll. Notably, the footnote collecting cases in support of the People's position omits this Court's case in *United States v. James*, as well as state cases from California (*People v. Dungo*, 55 Cal.4th 608 ((Cal. 2012)) and Florida (*Banmah v. State*, 87 So.3d 101 ((Fla. Dist. Ct. App 2012))).

of authority between appellate courts tasked with applying federal precedent to assess whether an area of the law is unsettled. *Carey v. Musladin*, 549 U.S. 70, 76 (2006). It has also been applied by federal courts in evaluating habeas claim that argued autopsy reports are testimonial. *E.g. Hensley*, 755 F.3d at 733-34; *Culton v. Arnold*, No. 14-CV-05099-JST, 2016 WL 3049731, at *13 (N.D. Cal. May 31, 2016); *see generally Vega*, 669 F.3d at 126 (noting that "[a] series of lower-court cases elaborating on the meaning of 'testimonial' " followed *Crawford*). As such, petitioner and the District Court wrongly rejected this analysis.

Petitioner likewise misconstrues the People's citation to *Williams v. Illinois*. Petitioner states that the People use this case to "cancel out the clear principles established in *Bullcoming* and *Melendez-Diaz*" and "unreasonably construes the non-binding plurality decision in *Williams v. Illinois* as overruling *Melendez-Diaz* and *Bullcoming*." Opposition Brief, 41. This argument sets a straw man ablaze. The People have consistently argued that there is no clearly established law addressing whether autopsy reports are testimonial. The People have simply argued that the fractured opinion in *Williams v. Illinois* highlights the uncertainty in the area. *See James*, 712 F.3d at 95; *see generally Hacheney v.*

*Obenland*, 732 F. App'x 541, 543 (9th Cir. 2018), *cert. denied*, 139 S. Ct. 388, 202 L. Ed. 2d 296 (2018) ("Indeed, the Supreme Court's subsequent plurality decision in *Williams v. Illinois*, 567 U.S. 50, 132 S.Ct. 2221, 183 L.Ed.2d 89 (2012), makes plain that the state court's decision was not contrary to clearly established law."). We have never argued that *Melendez-Diaz* and *Bullcoming* have been overruled or "cancelled out." We have consistently argued—with ample precedent—that the Supreme Court has not clearly established that autopsy reports are testimonial.

Petitioner next focuses heavily on the merits of a potential claim. *See* Opposition Brief, 44-49 (responding to the People's alternative argument in Point Two of their Main Brief). In doing so, petitioner essentially invites this Court to analyze the case at hand as though it were on direct appeal. On the merits of the claim, petitioner is wrong and the People rely upon our handling of this issue in our main brief. *See* Appellant's Brief, 37-44. Petitioner's arguments to the contrary weave together a series of inapposite cases in *Melendez-Diaz* and *Bullcoming* and the purportedly favorable dissent in *Williams*. This argument only highlights the unsettled nature of the Supreme Court's Confrontation Clause precedent and thus supports the People's dispositive argument that habeas

relief was inappropriate. Of course, this court need not address this issue should it find this area of the law unsettled. *Andrade*, 538 U.S. at 71.

**B.** **Supreme Court precedent has not clearly established that expert reliance on an autopsy report violates the Confrontation Clause. The People never waived this argument (Responding to Opposition Brief, Point 1C).**

The unsettled issue of testimoniality as it relates to autopsy reports is not the only circumstance that disqualifies petitioner from obtaining habeas relief. As detailed in our main brief, it is also not clearly established that it violates the Confrontation Clause when an expert relies on inadmissible hearsay to offer an opinion, and that expert's opinion is available for scrutiny at trial through cross-examination. Appellant's Brief, 32-36.

Contrary to petitioner's assertion, the People have not waived this argument. Opposition Brief, 53-54. Of course, "[it] is a well-established rule that an appellate court will not consider an issue raised for the first time on appeal.*" Keshner v. Nursing Pers. Home Care*, 794 F.3d 232, 234 (2d Cir. 2015) (quoting *Green v. United States*, 13 F.3d 577, 586 (2d Cir. 1994)). Here, a finding of waiver is unwarranted, however, since the People presented the argument before the Magistrate and the District Court. *United States v. Parisi*, 821 F.3d 343 (2d Cir. 2016). In our opposition to

the underlying writ petition, we explicitly contended that no Confrontation Clause violation ensued given that Dr. Ely supplied independent conclusions based on her training qualifications as an expert that were subjected to cross-examination by petitioner. Opposition to Habeas Petition, Memorandum of Law, 18 ("Dr. Ely made her own independent conclusions about the cause of death (the stab wound that penetrated Sherwood's heart). On cross-examination, Dr. Ely's knowledge and opinions were amply scrutinized, highlighting that she had not been present during the autopsy and that the information in the autopsy report neither identified an assailant, nor ruled out the possibility that the fatal wound was inflicted accidentally during a struggle.") (citations omitted).

In addition to presenting this contention to the District Court, the People also advanced it in our opposition brief to petitioner's application for a writ of certiorari back in 2017. A-251-A-252. Indeed, the People have made this argument during all stages of post-conviction litigation. It has been an integral component to our argument there was no Confrontation Clause violation at trial. On direct appeal, for instance, our Respondent's Brief stressed that the independence of Dr. Ely's conclusions regarding the manner and cause of death taken together with her availability for

cross-examination dispelled petitioner's confrontation claim (Appellate Division Respondent's Brief, 48).

Petitioner similarly misconstrues the parameters of the Appellate Division's holding on direct appeal. Conspicuously included in the court's ruling were citations to the Court of Appeals decisions in *People v. Freycinet* (11 N.Y.3d 38, 42 (N.Y. 2008)) and *People v. John* (27 N.Y.3d 294, 315 (N.Y. 2016)), which both emphasize the importance of independently reached conclusions and the opportunity for cross-examination as providing adequate safeguards of a defendant's right to confrontation. *People v. Garlick*, 144 A.D.3d 605, 606 (N.Y. App. Div. 2016); *accord* Appellant's Brief, 33 n.11). By making explicit reference to these cases, the Appellate Division necessarily rejected petitioner's claim based at least in part on this rationale.

Applying the standards of AEDPA deference, the petition should have failed on this basis, too. Petitioner relies on Justice Thomas' concurrence and Justice Kagan's dissent in *Williams* to claim that it was clearly established federal law in 2016 that the autopsy evidence introduced at his trial was inadmissible. Opposition Brief, 51-53. There, both Justices expressed reservations as to whether the contents of report serving as

the basis for the expert's testimony can be admitted for any purpose other than their truth. But neither the Thomas concurrence nor the Kagan dissent supports petitioner's position on the relevant inquiry. For one, Justice Thomas found the admission of the laboratory report did not undercut the defendant's right to confrontation. Indeed, he wrote separately to underscore the narrowness of his conclusion, which he reached "solely" because the statements in the report, like those in the autopsy report in this case, "lacked the requisite formality and solemnity to be considered testimonial." *Williams*, 567 U.S. at 108 (Thomas, J., concurring). To the extent that Justice Kagan's opinion deemed the testimony presented in *Williams* inadmissible as violative of the rule against hearsay, this dissenting minority view of how the four judges who joined the opinion would rule based on the particular facts before the court, did not conclusively resolve the question.

Thus, despite petitioner's contrary insistence, the interplay between expert testimony underpinned by inadmissible hearsay and the Confrontation Clause was not clearly established when the Appellate Division rejected the claim. Appellant's Brief, 34-36; *see United States v. Pablo*, 696 F.3d 1280, 1291 (10th Cir. 2012); *Nardi*, 662 F.3d at

112; *King v. Kowalski*, No. 2:11-CV-12836, 2020 WL 5768897, at \*4–5 (E.D. Mich. Sept. 28, 2020), *reconsideration denied*, No. 2:11-CV-12836, 2020 WL 6440921 (E.D. Mich. Nov. 3, 2020) (Observing that the fractured nature of the decision in *Williams* "suggests that there is no clearly established federal law which holds that a defendant's right to confrontation is violated when an expert witness testifies to forming an independent opinion after reviewing a report prepared by another expert who does not testify".).

Ultimately, *Bullcoming* and *Melendez-Diaz* were "measurement cases." There, the sole purpose of the witnesses' trial testimony was to relay empirical data contained in a report they had no role in preparing. The constitutional violation was clear-cut because communicating to the jury whether an individual's blood alcohol content is above a certain level and whether substance met the chemical threshold is a function any reasonably trained layman can perform. In contrast, Dr. Ely provided medical opinions that were based on her qualifications and training as an expert, and her testimony was subjected to rigorous and meaningful cross-examination by petitioner's trial counsel. Accordingly, in view of these differences from the report at issue, "no fair-minded jurist could

think that [*Bullcoming* and *Melendez-Diaz*] clearly establish" that the admission of the autopsy evidence in this case "is inconsistent with the Constitution." *See Nevada v. Jackson*, 569 U.S. 505, 509 (2013).

## C. It is unnecessary to resolve whether the District Court correctly determined that the Appellate Division's ruling was not "contrary to" Supreme Court precedent (Responding to Opposition Brief, Point 1D and 1E).

Petitioner next contends that the Appellate Division's holding was contrary to *Bullcoming* and *Melendez-Diaz*. Opposition Brief, 58-59. Petitioner further asserts that the Appellate Division applied an invalidated legal standard. Opposition Brief, 59-62. On these points, petitioner claims that the District Court erred.

This Court need not address whether the Appellate Division's ruling violated the "contrary to" clause of 28 U.S.C. § 2254, because, for the reasons stated above, the testimoniality of autopsy reports is not clearly established. Appellant's Brief, 19-36. This threshold determination ends the inquiry, and it is irrelevant whether the analysis could proceed under the "unreasonable application" or "contrary to" prongs. *Andrade*, 538 U.S. at 71; 28 U.S.C. § 2254(d)(1).

In any event, the Appellate Division's ruling did not violate the "contrary to" prong given the material differences between autopsies and

the testimonial statements. *E.g. Hensley*, 755 F.3d at 732; *Nardi*, 662 F.3d at 111. Assuming for the sake of the argument that there is governing law on this issue, the Appellate Division correctly identified and applied it to autopsy reports despite their material differences. Appellant's Brief, 37-44. Thus, although this Court need not reach this issue, petitioner's contention on this front is meritless.

**D.** **Any potential error in admitting the report or any independent testimony referencing the report was harmless (Responding to Opposition Brief, Point 1F).**

Lastly, petitioner's diversionary contentions are insufficient to undercut the People's alternatively dispositive showing on the issue of harmlessness. Unable to respond meaningfully, petitioner resorts to overstating the significance of the autopsy report to the People's case. Opposition Brief, 61-64. Yet, against the backdrop of the other evidence it was able to consider, the jury reasonably found independent of the autopsy evidence that petitioner had inflicted the injuries that resulted in the victim death. Consequently, this Court should have "no trouble in concluding that any error [was] harmless" beyond a reasonable a doubt. *McBee v. Burge*, 395 F. App'x 762, 764 (2d Cir. 2010).

Contrary to his assertions, the surveillance video capturing the crime is unmistakable in its depiction of petitioner repeatedly thrusting an object against the victim's chest. Conversely, despite her undeniable participation in the attack, it is evident to any reasonable observer of the footage that Joanna was unarmed. Rather, she is only seen punching and kicking the victim as he lay on the ground after the stabbing. In the absence of any indication from the surveillance or of any other evidenced adduced at trial that Joanna was armed with a weapon, there was no factual basis to sustain the conclusion than anyone other than petitioner caused injuries that led to the victim's death. Importantly, petitioner elects to overlook the fact that the video footage was corroborated by his statement to police acknowledging that he and the victim were involved in a physical altercation, as well as his immediate flight from the crime scene evidencing his consciousness of guilt. Accordingly, even without the autopsy report, the remaining evidence was sufficient to disabuse the jury if any doubt as to which of the co-defendants inflicted the mortal wounds.

Petitioner also exaggerates the import of the autopsy evidence by suggesting that police only suspected that petitioner was the primary

assailant once the autopsy report was finalized. But the timing and contours of the People's charging decision has nothing to do with the question on harmless error review of whether there was sufficient evidence of guilt beyond a reasonable doubt, notwithstanding any Confrontation Clause violation that might have occurred, to sustain the verdict. Besides lacking in relevance, the argument misrepresents the record. The day after the crime, on November 2, 2011 police issued an I-card signifying that petitioner was a wanted person in connection with a suspected homicide. Furthermore, petitioner had been already been arrested and indicted for murder several weeks before the results of the autopsy were available on December 29, 2011. Any notion that the results of the autopsy report primary and sole impetus for prosecuting petitioner for murder is, therefore, groundless and should be rejected.

Inasmuch as petitioner stresses that the determination of what happened on the surveillance tape and the participants' respective roles in contributing to the events depicted presented questions for the trier of fact, the People do not dispute this proposition. Still, it was firmly within the province of the jury to resolve these questions against petitioner and in full accordance with the People's theory of the case. The lack of autopsy

evidence, thus, would not have undermined the jury's unanimously ascertained conclusion that petitioner was responsible for causing the victim's death and that he did so with the required mens rea. Given all this, any error was harmless. *Millender*, 2020 WL 1331053, at *7; *Alger v. MacDonald*, No. 15-CV-04568-WHO, 2018 WL 3054757, at *12 (N.D. Cal. June 20, 2018), *certificate of appealability denied* No. 18-16339, 2019 WL 7602252 (9th Cir. Sept. 27, 2019); *Davidson v. Bowersox*, No. 4:11CV79 NCC, 2014 WL 942738, at *7 (E.D. Mo. Mar. 11, 2014). Accordingly, for the reasons stated in the People's main brief and discussed in reply, the petition should have been denied. This Court should reverse.

## CONCLUSION

**THE OPINION OF THE DISTRICT COURT SHOULD BE REVERSED AND THE PETITION FOR A WRIT OF HABEAS CORPUS SHOULD BE DISMISSED.**

RESPECTFULLY SUBMITTED,

DARCEL D. CLARK
DISTRICT ATTORNEY
BRONX COUNTY
ATTORNEY FOR RESPONDENT

BY: _____ /S/ _____
NANCY D. KILLIAN
ASSISTANT DISTRICT ATTORNEY

_____ /S/ _____
PETER D. CODDINGTON
ASSISTANT DISTRICT ATTORNEY

_____ /S/ _____
JOSHUA P. WEISS
ASSISTANT DISTRICT ATTORNEY

_____ /S/ _____
ROBERT C. MCIVER
ASSISTANT DISTRICT ATTORNEY

December 11, 2020

## CERTIFICATE OF COMPLIANCE

I, Joshua P. Weiss, an attorney duly admitted to practice in this Court, do hereby certify that this brief, filed on behalf of Respondent-Appellee, complies with the type-volume limitation set forth in Local Rule 32.1(a)(4)(A). Based on the word count of our word-processing system, the brief contains 4,885 words.

_____/S/_____
Joshua P. Weiss
Assistant District Attorney

December11, 2020

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
-----------------------------------------------------------------------------X

## JAMES GARLICK,

PETITIONER-APPELLEE,                    AFFIDAVIT OF SERVICE
                                                BY MAIL

-AGAINST-

20-1796

## WILLIAM LEE,
## SUPERINTENDENT OF EASTERN CORRECTIONAL FACILITY

RESPONDENT-APPELLANT.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------------X

STATE OF NEW YORK          )
                           )ss:
COUNTY OF BRONX            )

JOSE RODRIGUEZ,, being duly sworn, say: I am an employee in the office of

DARCEL D. CLARK, District Attorney of Bronx County.

On the 11TH day of December I served One (1) copy of Reply Brief for Respondent's

Appellate on Matthew Bova, by enclosing same in a securely sealed post-paid wrapper addressed

as follows:              Matthew Bova
                         Center for Appellate Litigation
                         120 Wall Street, 28th Floor
                         New York, New York 10005

and depositing same in the box regularly maintained by the United States Government located

at 198 East 161st Street, Bronx, New York 10451, addressed to said attorneys at the above number

that being the address given by attorneys in the last papers served by him/her in the within

proceeding.

Sworn to before me this
11th  December 2020

_Rena Broome_                                       _Jose Rodriguez_
NOTARY                    CITY OF NEW YORK          JOSE RODRIGUEZ
                          COMMISSIONER OF DEEDS
                          RENA BROOME
                          MAR.1,2016-MAR.1,20
                                    20
                              3-7307